In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-2790

TRAVELERS PROPERTY CASUALTY and
TRAVELERS INDEMNITY COMPANY,

*Plaintiffs-Appellants*,

*v.*

ROSS GOOD, individually and on behalf of a class,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:11-cv-00694—**Joan Humphrey Lefkow**, *Judge.*

ARGUED JANUARY 17, 2012—DECIDED JULY 27, 2012

Before EASTERBROOK, *Chief Judge*, and CUDAHY and
HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* This case is an appeal from
the district court's discretionary decision not to exercise
jurisdiction over a declaratory judgment action because
parallel state court proceedings were pending. We affirm
the dismissal, but on a different ground. After exploring

some of the more arcane borders of federal jurisdiction based on diversity of citizenship, we conclude that the district court lacked subject matter jurisdiction. The plaintiffs' small disputes with many claimants cannot be aggregated to satisfy the amount-in-controversy requirement of 28 U.S.C. § 1332(a).

I.  *Facts and Procedural Background*

The plaintiffs-appellants are two affiliated insurance companies we will simply call "Travelers." They filed this federal action seeking a declaratory judgment that they had no duty to defend their insured, Rogan Shoes, Inc., in a class action suit brought against it in Illinois state court for violations of the federal Fair and Accurate Credit Transactions Act of 2003, 15 U.S.C. § 1681c(g). That act prohibits businesses from including on sales receipts the expiration date or more than the last five digits of the purchaser's credit or debit card, authorizing damages of up to $1,000 per unlawful receipt. § 1681n(a). On behalf of a class, customer Ross Good sued Rogan Shoes in state court for violating the act by printing 387,291 receipts displaying the expiration dates of his and other class members' charge cards in 2008 and 2009. Good sought statutory damages for class members in the staggering amount of $387 million. Rogan Shoes tendered Good's suit to Travelers for defense pursuant to its liability insurance policies. Travelers denied coverage, leaving Rogan Shoes to its own devices.

Rogan Shoes eventually settled with Good and the class for $16 million, but not in cash, or at least not Rogan

Shoes' cash. The settlement agreement specified that the judgment would be satisfied only through proceeds from Rogan Shoes' insurance policies with Travelers, with the exception of an up-front cash payment by Rogan Shoes of $50,000 to cover Good's legal costs. As part of the settlement agreement, Rogan Shoes assigned to the plaintiffs all of its "claims against and rights to payments from Travelers" under the policies, excepting the store's claim for attorney fees in defending the suit and its claim for reimbursement of its $50,000 out-of-pocket payment. The state trial court approved the settlement on July 1, 2010.

On January 4, 2011, Good filed a supplementary action in the state court to discover Travelers' assets for the satisfaction of his judgment against Rogan Shoes. In Illinois, such actions are called "citation" proceedings. See 735 ILCS 5/2-1402. The state court citation was served on Travelers' agent two days later. The citation summoned Travelers to court to appear in court on February 1 to produce several categories of documents relevant to the insurance policies Travelers had issued to Rogan Shoes. On January 31, Travelers filed this action in federal district court seeking a declaratory judgment that insurance policies it had issued to Rogan Shoes did not cover Good's statutory claims based on the credit card receipts. The district court dismissed Travelers' complaint on the basis of *Wilton/Brillhart* abstention, under which a federal district court has discretion to dismiss a declaratory judgment action when parallel proceedings are pending in state court. See *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995); *Brillhart v.*

*Excess Ins. Co. of America*, 316 U.S. 491 (1942). Travelers has appealed, arguing that the district court abused its discretion by dismissing its action. During oral argument we ordered supplemental briefing on the issue of subject matter jurisdiction. We directed the parties to address whether the case satisfies the amount-in-controversy requirement for diversity jurisdiction, 28 U.S.C. § 1332(a), in light of the fact that Rogan Shoes had assigned its interests in its Travelers policies to Good and his fellow class members, none of whom individually claim a share of more than $75,000.

## II. *Discussion*

To invoke the diversity jurisdiction of the federal courts, a party must establish both that diversity of citizenship is complete and that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). Complete diversity is present in this case. Both Travelers companies are Connecticut corporations that also have their principal places of business in that state. Good is a citizen of Illinois, and Rogan Shoes is a Wisconsin corporation with its principal place of business in Wisconsin. The amount-in-controversy requirement, however, bars the exercise of federal jurisdiction here. We address first the general rule against aggregating different parties' claims to meet the amount in controversy and some of its exceptions. We then turn to issues that arise from the fact that Rogan Shoes assigned its claims against Travelers to the plaintiff class, and

address how an insurer in Travelers' position could obtain a federal forum for such disputes.

A.  *The Rule Against Aggregation and its Exceptions*

No individual defendant, including Rogan Shoes, has a claim for more than $75,000 against Travelers. The general rule is that the claims of multiple litigants cannot be aggregated to reach the jurisdictional amount in controversy. See *Snyder v. Harris*, 394 U.S. 332, 335 (1969). The anti-aggregation rule applies both to cases in which multiple plaintiffs seek to combine their claims against a single defendant, see *Thomson v. Gaskill*, 315 U.S. 442 (1942), and to those brought by a single plaintiff against multiple defendants, see *Middle Tennessee News Co. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1081 (7th Cir. 2001); see also 14AA Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*, § 3704, at 566-95 (2011) (hereinafter "Wright & Miller") (collecting cases).

Travelers contends that there is no need for aggregation in this case because "from Travelers' perspective, there is only one claim, by its insured, for the $16 million judgment entered against it." In support of this theory, Travelers cites *Meridian Security Insurance Co. v. Sadowski*, 441 F.3d 536 (7th Cir. 2006), in which an insurer sought a declaratory judgment that its liability policy did not cover a suit under the Telephone Consumer Protection Act then pending in state court against its insured. We held that the case satisfied the amount-in-controversy

requirement. The anti-aggregation rule "does not apply to a federal declaratory-judgment action between a single plaintiff and a single defendant, just because the unitary controversy between these parties reflects the sum of many smaller controversies." *Id.* at 539, citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347-48 (1977).

The decisive difference between this case and *Meridian Security* is that at the time the insurer filed the declaratory judgment action in that case, the insured's arguable right to recover under its policy was still completely its own. No assignment had been made. By the time Travelers filed this action, however, Rogan Shoes had already assigned its claims to the members of the *Good* class, and no individual class member had a claim for more than $75,000.

According to Travelers, the fact of an assignment in this case is immaterial because the assignment "does not change whose claim it is." But that is precisely what an assignment does. It transfers one person's property, interest, or rights to another. Once Rogan Shoes made the assignment of rights, this was no longer a "unitary controversy" between the insurer and its insured. It had become a multi-party dispute between Travelers and thousands of class claimants. *Meridian Security* is inapposite.

For purposes of this case, the most relevant exception to the general rule against aggregation is that the claims of co-parties may be added together when they have a "common and undivided interest" in a "single title or

right." *Snyder v. Harris*, 394 U.S. 332, 335 (1969). Can the relatively small claims of these class members be aggregated as "common and undivided" interests in a "single title or right"? Travelers declined to address this question in its supplemental memorandum, and it took that course at its peril. Jurisdictional objections cannot be forfeited or waived, of course, for this court has an "independent obligation to satisfy itself that federal subject matter jurisdiction exists." *Smith v. American General Life & Accident Ins. Co.*, 337 F.3d 888, 892 (7th Cir. 2003). The court need not bend over backwards to construct alternative theories to persuade itself that subject matter jurisdiction exists, see *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 637 (1st Cir. 1989), but since the district court considered the case and we raised this issue, we address it here.

The anti-aggregation rule had its origin in a case involving the appellate jurisdiction of the Supreme Court rather than the original subject matter jurisdiction of the district courts. See *Oliver v. Alexander*, 31 U.S. (6 Pet.) 143 (1832). Much later, in 1893, "the original *Alexander* construction of [the Court's] appellate jurisdiction was applied to the jurisdictional-amount requirement for federal trial courts." *Zahn v. International Paper Co.*, 414 U.S. 291, 294 n.3 (1973), citing *Walter v. Northeastern R.R. Co.*, 147 U.S. 370, 373 (1893). Apparently, little thought was given to whether "different aggregation policies might be of greater importance for original federal court jurisdiction than for appellate jurisdiction." 14AA Wright & Miller § 3704, at 596. By 1916, however, the Court was able to describe the anti-aggregation principle

as a "settled rule" of diversity jurisdiction, *Pinel v. Pinel*, 240 U.S. 594, 596 (1916), and it certainly is so now. The rule is:

> When two or more plaintiffs, having *separate and distinct demands*, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a *common and undivided interest*, it is enough if their interests collectively equal the jurisdictional amount.

*Zahn*, 414 U.S. at 294 (emphases added), quoting *Troy Bank v. G. A. Whitehead & Co.*, 222 U.S. 39, 40-41 (1911).[1]

The anti-aggregation rule thus distinguishes between "separate and distinct interests," which cannot be aggregated to reach the jurisdictional minimum, and "common and undivided interests," which can be aggregated. The Supreme Court has opined that the "lower courts have developed largely workable standards for determining when claims are joint and common, and therefore entitled to be aggregated, and when they are

---

[1] The general rule in *Zahn* has been modified in respects not material here. For example, under the supplemental jurisdiction statute, 28 U.S.C. § 1367, if one plaintiff's claim satisfies the amount-in-controversy requirement, the smaller claims of other plaintiffs can be joined as long as diversity of citizenship remains complete and all claims are part of the same case or controversy. *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 549 (2005); *Stromberg Metal Works, Inc. v. Press Mechanical, Inc.*, 77 F.3d 928, 930-32 (7th Cir. 1996).

separate and distinct and therefore not aggregable." *Snyder*, 394 U.S. at 341. Other courts and commentators have taken a less sanguine view. See, *e.g.*, *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1262 (11th Cir. 2000) (noting "pervasive criticism of the 'separate and distinct' versus 'common and undivided' distinction as arcane and confusing"); *Eagle v. American Tel. and Tel. Co.*, 769 F.2d 541, 546 (9th Cir. 1985) ("The dividing line is not clear."); *Local Div. No. 714, Amalgamated Transit Union, v. Greater Portland Transit Dist.*, 589 F.2d 1, 10 (1st Cir. 1978) ("The distinction between 'a common and undivided interest' and 'separate and distinct' claims is not entirely clear."), overruled on other grounds by *Jackson Transit Auth. v. Local Div. 1285, Amalgamated Transit Union*, 457 U.S. 15 (1982); *Aetna Cas. & Sur. Co. v. Graves*, 381 F. Supp. 1159, 1162-63 (W.D. La. 1974) ("We also realize that the rules on aggregation of claims to satisfy the requirements of minimum amount in controversy '. . . turn on a mystifying conceptual test.'") (ellipsis in original), quoting Wright, *Law of Federal Courts* § 36, at 121; 14AA Wright & Miller § 3704, at 600-01 ("terms such as 'common' and 'several' are poor words for a subject matter jurisdiction test — or anything else for that matter — since they have little or no clear and ascertainable meaning.") (some internal quotations omitted).

The dichotomy between common and undivided interests and separate and distinct interests is workable in the easy, paradigm cases. For example, where there is a "single indivisible res, such as an estate" or "a piece of property (the classic example)," it makes sense to think of co-parties' claims to the res as "common and

undivided." *Gilman v. BHC Sec., Inc.*, 104 F.3d 1418, 1423 (2d Cir. 1997), quoting *Bishop v. General Motors Corp.*, 925 F. Supp. 294, 298 (D.N.J. 1996). Conversely, where the plaintiffs' claims are "cognizable, calculable, and correctable individually," *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001), — say, personal injuries arising from mass torts — they are clearly "separate and distinct" and may not be aggregated to meet the amount in controversy. Thus in the foundational *Troy Bank* case, the two plaintiffs could not aggregate their claims under separate promissory notes made payable by the defendant, but they could aggregate their claims based on a vendor's lien that they owned jointly. 222 U.S. at 41.

In closer cases, the distinction between common and undivided interests and separate and distinct interests is less useful. It has proven particularly slippery in cases involving insurance claims. For example, in *Motorists Mutual Ins. Co. v. Simpson*, 404 F.2d 511 (7th Cir. 1968), an insured had caused an accident that resulted in damage to a rental vehicle and the death of its driver. The insured had been found liable to both the deceased driver's widow and the owner of the rented vehicle. The insurer then sought a declaratory judgment that it was not required to cover liability to the widow for the death or to the owner for the property damage. Under the policy, neither type of liability was sufficient alone to meet the amount-in-controversy requirement, but if they were combined, they would exceed the minimum. The district court found that aggregation of the relief sought against two claimants was appropriate because both claims arose under the same instrument. We

reversed, reasoning that the claims of the widow and the vehicle owner were separate and distinct, so that the insurer's potential liability to them would have been several rather than joint. *Id.* at 513, quoting *Thomson v. Gaskill*, 315 U.S. 442, 447 (1942) ("Aggregation of plaintiffs' claim cannot be made merely because the claims are derived from a single instrument."); accord, *e.g.*, *Crenshaw v. Great Central Ins. Co.*, 482 F.2d 1255, 1259-60 (8th Cir. 1973) (denying aggregation of claims against insurance company on uninsured motorist policy by parents of deceased for wrongful death and by their daughter for her own personal injuries); *Eagle Star Ins. Co. v. Maltes*, 313 F.2d 778, 781-82 (5th Cir. 1963) (denying aggregation to three plaintiffs who sued insurer after obtaining separate judgments against insured); Jeffrey L. Rensberger, *The Amount in Controversy: Understanding the Rules of Aggregation*, 26 Ariz. St. L.J. 925, 945 & n.134 (1994) ("Courts also will not aggregate claims when an insured sues for coverage on a loss or an insurer sues for a declaration of non-coverage.") (collecting cases).

Other courts have taken different approaches. In *Phoenix Ins. Co. v. Woolsey*, 287 F.2d 531, 532 (10th Cir. 1961), for example, the court allowed aggregation of claims of nine creditors to whom an insured had separately assigned proceeds of a fire insurance policy, presumably because the creditors cross-assigned to one another their interests in the proceeds "so that each might share pro rata in the recovery against the defendants and . . . agreed to waive against each other any priorities which might exist between them." See also *Manufacturers Casualty Ins. Co. v. Coker*, 219 F.2d 631, 633

(4th Cir. 1955) (in declaratory judgment action brought by auto insurer for declaration of non-liability, allowing aggregation of claims of 23 children injured in school bus accident on ground that all claims "arise out of a single instrument").

Confronting the aggregation question in the insurance context, several circuits have attempted to distill some consistent meaning from the confusion. In a class action brought by automobile insureds against their insurers to recover the diminished value of their vehicles after they were repaired, the Eleventh Circuit held that the plaintiffs' claims could not be aggregated because they were "asserting rights arising from their individual insurance policies, and if successful, they [would] recover the amount of excessive premiums each paid under his own policy." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1264 (11th Cir. 2000). The court adopted a formulation of the distinction between "separate and distinct" interests and "common and undivided" interests first articulated in *Eagle Star* by Judge Tuttle for the Fifth Circuit. Under this test, aggregation is permitted "only in those situations where there is not only a common fund from which the plaintiffs seek relief, but where the plaintiffs also have a joint interest in that fund, such that if plaintiffs' rights are not affected by the rights of co-plaintiffs, then there can be no aggregation.*" Id.* at 1262-63, quoting *Eagle Star*, 313 F.2d at 781. In other words, the *Eagle Star* rule is that the claims of co-parties are "common and undivided" — and thus can be aggregated — only where each claim (1) is part of a "common fund" and (2) could not be adjudicated on an individual basis without affecting the interests of the other claimants.

At least five other circuits have endorsed the *Eagle Star* formulation or its functional equivalent. See *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 824 (6th Cir. 2006) ("Aggregation is permitted 'where there is *not only* a common fund from which the plaintiffs seek relief, but where the plaintiffs *also have a joint interest in that fund*, such that if plaintiffs' rights are not affected by the rights of co-plaintiffs then there can be no aggregation. In other words, the obligation to the plaintiffs must be a joint one.'") (emphasis in original), quoting *Eagle Star*, 313 F.2d at 781; *In re Ford Motor Co./Citibank (South Dakota), N.A.*, 264 F.3d 952, 959 (9th Cir. 2001) (claims of cardholder plaintiffs against credit card companies arising out of the termination of a purchase rebate program could not be aggregated as common and undivided interests because they "do not implicate a 'single indivisible res,' and could be adjudicated on an individual basis because the consolidated plaintiffs (and putative class members) have no common and undivided interest in accruing rebates under the program."); *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1292 (10th Cir. 2001) ("[A] common interest in a pool of funds is not the type of interest that permits aggregation of claims under the 'common fund' doctrine. Each class member could sue separately for punitive damages and have his right to recovery determined without implicating the rights of every other person claiming such damages.") (citation and some quotation marks omitted); *Gilman*, 104 F.3d at 1423 (holding that claims of plaintiff-investors against defendant-brokerage for illegally charging "order flow payments" on securities

transactions could not be aggregated because they "*do not* implicate a 'single indivisible res,' and *could be* adjudicated on an individual basis"); *Dierks v. Thompson*, 414 F.2d 453, 456 (1st Cir. 1969) (approving aggregation of multiple plaintiffs' claims to reach jurisdictional amount because they "are seeking to establish a trust fund as distinguished from individual cash claims against the defendants" and the "fact that the individual plaintiffs' beneficial interests may be of fixed proportion does not vary the fact that the existence of a single trust res is of common importance").

In accord with our colleagues in these other circuits, we adopt the *Eagle Star* rule: we "allow aggregation only in those situations where there is not only a common fund from which the plaintiffs seek relief, but where the plaintiffs also have a joint interest in that fund, such that . . . plaintiffs' rights are . . . affected by the rights of co-plaintiffs." 313 F.2d at 781. Unlike the more abstract terminology from *Troy Bank* and *Zahn*, it has the virtue of making this case fairly easy to resolve. First, the potential proceeds from the Travelers policies do not qualify as a "common fund." The existence of a "common fund" depends on the "nature of the right asserted, not whether successful vindication of the right will lead to a single pool of money that will be allocated among the plaintiffs." *Gilman*, 104 F.3d at 1427. Thus, a common fund exists when "plaintiffs share[ ] a pre-existing (pre-litigation) interest in the subject of the litigation." *Id.* In this case, the *Good* class members did not share a pre-existing interest in recovery against Rogan Shoes or its insurers. The class members' claims

all arose from separate transactions. As the Second Circuit said in *Gilman*: "There is no fund. The claim remains one on behalf of separate individuals for the damage suffered by each due to the alleged conduct of the defendant." *Id.* (ellipses omitted), quoting *Rock Drilling Local Union No. 17 v. Mason & Hanger Co.*, 217 F.2d 687, 695 (2d Cir. 1954).

Even if Travelers could meet the common fund element of the *Eagle Star* formulation, the claims of the *Good* class members also fail the second element because each claimant's "rights are not affected by the rights of co-plaintiffs." 313 F.2d at 781.

Under the terms of the settlement agreement between Good and Rogan Shoes, each class member would receive a pro rata (per receipt) share of the $16 million recovery that is sought, with a maximum award of $1,000 regardless of the number of unlawful receipts that Rogan Shoes issued any individual. After attorney fees are deducted, roughly $10.67 million would remain in the pot. Because of the $1,000 cap on individual awards, in order for any one class member's claim to be affected by the claims of other class members, at least 10,667 claimants would have to submit viable claims. Is that likely? We do not know.

In all cases, the party asserting federal jurisdiction has the burden of proof to show that jurisdiction is proper. *E.g.*, *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). The "proponent of jurisdiction may be called on to prove facts that determine the amount in controversy," and must do so by a preponderance of the

evidence. *Meridian Security*, 441 F.3d at 541. Here, Travelers has not done so. On the basis of the settlement agreement alone, we cannot conclude that it is more likely than not that the class will produce more than 10,667 claimants and, if so, that "if one plaintiff cannot or does not collect his share, the shares of the remaining plaintiffs [would be] increased." See *Sellers v. O'Connell*, 701 F.2d 575, 579 (6th Cir. 1983) ("Where a group of plaintiffs litigate individual cash claims the amount of which remain unaffected by the results obtained by fellow plaintiffs, the litigants may not aggregate their claims when alleging jurisdiction.") (citations omitted); *Kopff v. World Research Group, LLC*, 298 F. Supp. 2d 50, 56 (D.D.C. 2003) ("plaintiffs' claims can be aggregated when they make an integrated claim — in other words, if the right is a collective right pursuant to which one plaintiff's failure to collect his or her share increases the remaining plaintiffs' damages") (internal quotation marks omitted). The claims of the *Good* class to Rogan Shoes' potential insurance proceeds are not "common and undivided" and therefore cannot be aggregated to reach the jurisdictional minimum.

B. *Assignment Affecting Jurisdiction*

When assignments of rights seem to have the effect of creating diversity jurisdiction, federal courts give them close scrutiny for signs of attempts to manipulate the choice of forum. Congress has provided: "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly

or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359; see also *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 828-29 (1969) (affirming dismissal for lack of jurisdiction: "If federal jurisdiction could be created by assignments of this kind, which are easy to arrange and involve few disadvantages for the assignor, then a vast quantity of ordinary contract and tort litigation could be channeled into the federal courts at the will of one of the parties. Such 'manufacture of Federal jurisdiction' was the very thing which Congress intended to prevent when it enacted § 1359 and its predecessors."); *Airlines Reporting Corp. v. S and N Travel, Inc.*, 58 F.3d 857, 862 (2d Cir. 1995) ("We give careful scrutiny to assignments which might operate to manufacture diversity jurisdiction . . . .").

It is less clear how closely federal courts should scrutinize assignments that have the effect of defeating federal diversity jurisdiction. Compare *Miller v. Perry*, 456 F.2d 63, 67, 66 (4th Cir. 1972) (reading *Kramer* as "injecting a new note of realism into the determination of diversity jurisdiction" and carefully scrutinizing attempts to defeat diversity jurisdiction, as well), with *Messer v. American Gems, Inc.*, 612 F.2d 1367, 1375 (4th Cir. 1980) ("28 U.S.C. § 1359 attaches no consequences to steps taken to *defeat* diversity jurisdiction."). In any event, we do not see in this case any indication that Rogan Shoes and Good negotiated the assignment of the former's insurance proceeds for the purposes of thwarting Travelers' right to a federal forum.

We reach this conclusion in part because the assignment did not have the effect of preventing Travelers from

securing a federal forum to resolve this controversy. First, it could have sought a declaratory judgment of non-coverage immediately after Rogan Shoes tendered Good's claims to it. Before the assignment, the amount-in-controversy requirement would have been met. See *Meridian Security*, 441 F.3d at 539.

Second, even after the assignment, Travelers could have removed the state court proceeding to federal court once Good filed that action seeking to discover Travelers' assets. The state court citation proceeding on behalf of the *Good* class would have been subject to the Class Action Fairness Act, so that removal would not have been barred by the one-year limit on removal in diversity cases. See 28 U.S.C. § 1453(b). (The Class Action Fairness Act does not apply in this declaratory judgment action, however, because the act applies only where there is a plaintiff class, not a defendant class. See 28 U.S.C. § 1332(d)(2).)

To counter that argument, Travelers argues that the removal option was foreclosed by another decision from the district where this case was filed. The facts and posture of that case, *Eclipse Manufacturing Co. v. United States Compliance Co.*, No. 05 C 5406, 2006 WL 42395 (N.D. Ill. Jan. 4, 2006), were strikingly similar to this one. Although the case is not binding precedent, one could expect the decision to influence practice in the district, and it deserves our close attention. The plaintiff in *Eclipse Manufacturing* had filed a putative class action against a company for allegedly sending unsolicited advertisements by facsimile in violation of the Telephone

Consumer Protection Act, 47 U.S.C. § 227, and state law. The parties agreed to a $4 million judgment that, as here, could be executed only on money received from the defendant's liability insurer. The state trial court entered a judgment approving the settlement, after which the class members filed a citation to discover assets under 735 ILCS 5/2-1402, naming the liability insurer as a "third-party respondent." Instead of seeking a federal declaratory judgment of non-liability, as Travelers did here, the *Eclipse Manufacturing* insurer removed the citation action to the federal district court.

The district court ordered remand, finding for the plaintiff class on two separate grounds: First, it held that the Illinois citation proceeding was not removable under 28 U.S.C. § 1441(a) because it was not a "separate and independent action" from the underlying suit itself. *Eclipse Mfg.*, 2006 WL 42395, at *3. Second, the court held that even if the citation proceeding were separately removable, "removal would still be improper because the jurisdictional amount requirement for diversity is not satisfied." *Id.* at *4. The court explained that each class member's pro rata share of the settlement was less than $300, and aggregation was not permitted because the judgment "cannot be viewed as an undivided lump sum." *Id.*

We disagree with the *Eclipse Manufacturing* court's first conclusion that the citation proceeding was not a removable action. Section 1441 permits removal of "civil action[s] brought in a State court" over which federal district courts "have original jurisdiction." 28 U.S.C.

§1441(a). The statute has long been interpreted to allow removal only of "independent suits" but not ancillary or "supplementary" proceedings. See *Federal Sav. & Loan Ins. Corp. v. Quinn*, 419 F.2d 1014, 1018 (7th Cir. 1969); see also *Barrow v. Hunton*, 99 U.S. 80, 83 (1878) (explaining that a supplementary action so connected with an original action as to form a mere incident or continuation of it is not removable as a separate suit). This prudential doctrine seeks to avoid the waste of having federal courts "entertain[ ] 'satellite elements' of pending state suits and judgments." *Armistead v. C & M Transp., Inc.*, 49 F.3d 43, 46 (1st Cir. 1995), quoting 14A Wright & Miller § 3721.

Whether a particular state judicial procedure qualifies as a separate action is not an all-or-nothing proposition. It depends on the context of each case in which it arises. See *Quinn*, 419 F.2d at 1018-19. Removability is a question of federal law, so the state's own characterizations of the proceeding are not decisive. See *Chicago, Rock Island & Pac. R.R. Co. v. Stude*, 346 U.S. 574, 580 (1954); *Quinn*, 419 F.2d at 1018.

No bright-line formula exists for separating the independent and removable sheep from the ancillary and non-removable goats. But one nineteenth century judge offered this helpful distinction: "where the supplemental proceeding is not merely a mode of execution or relief, but where it, in fact, involves an independent controversy with some new and different party, it may be removed into the federal court.*" Buford v. Strother*, 10 F. 406, 407 (C.C.D. Iowa 1881) (Love, J.). A citation pro-

ceeding (or a garnishment proceeding, as it is called in most jurisdictions) may often be "merely a mode of execution of relief." *Id.*; see, *e.g.*, *Vukadinovich v. McCarthy*, 59 F.3d 58, 62 (7th Cir. 1995) ("Garnishment is a standard, often essential, step in the collection of a judgment, and the party holding the judgment . . . ought to be able to take this step without having to start a new lawsuit in a different court system.").

Consistent with Judge Love's distinction, however, when garnishment proceedings present genuine disputes with new parties and raise new issues of fact and law, courts overwhelmingly treat them as independent and removable actions. See 14B Wright & Miller § 3721, at 28-30 & n.58 ("For example, proceedings for garnishment . . . are considered civil actions within the meaning of the federal removal statute.") (collecting cases); see, *e.g.*, *Butler v. Polk*, 592 F.2d 1293, 1295-96 (5th Cir. 1979) (garnishment action against third-party insurer was removable); *Swanson v. Liberty Nat'l Ins. Co.*, 353 F.2d 12, 13 (9th Cir. 1965) (same); *Randolph v. Employers Mut. Liab. Ins. Co. of Wis.*, 260 F.2d 461, 464-65 (8th Cir. 1958) (same); *Adriaenssens v. Allstate Ins. Co.*, 258 F.2d 888, 890 (10th Cir. 1958) (same).

The reason is clear: when the garnishment action brings in a new party and raises new and distinct disputed issues, the proceeding is not "substantially a continuation of a prior suit." See *Quinn*, 419 F.2d at 1018. Judicial economy concerns about "satellite" issues no longer apply. This is not to say that any garnishment action that involves a third party is a separate and removable action. But "[w]here the garnishment procedures

allow for adversarial litigation of disputed issues, and where the garnishment action involves a new party and disputed rights and issues not decided by the state court, removal should be permitted." *Harding Hosp. v. Sovchen*, 868 F. Supp. 1074, 1078 (S.D. Ind. 1994) (denying remand after Travelers removed garnishment action that sought to resolve insurance coverage issue); accord, *Johnson v. Wilson*, 185 F. Supp. 2d 960, 964-65 (S.D. Ind. 2002) (denying remand where garnishment proceeding involved new parties and raised legal and factual issues not decided in the state court litigation); see also *Stewart v. EGNEP (Pty) Ltd.*, 581 F. Supp. 788, 790 (C.D. Ill. 1983) (denying remand of garnishment proceedings raising interests and defenses separate from those of judgment creditors).

In light of these principles, the citation proceeding against Travelers was separate from the underlying suit between Rogan Shoes and Good. It could have been removed if the requirements of diversity jurisdiction were satisfied. Travelers was brought into state court under a law allowing the court to "[a]uthorize the judgment creditor to *maintain an action* against any person or corporation that, it appears *upon proof satisfactory to the court*, is indebted to the judgment debtor, for the recovery of the debt." 735 ILCS 5/2-1402(c)(6) (emphases added). We need not specify here the precise time that the citation proceeding might have been removable (apart from amount-in-controversy issues), and the removal statute allows a little play in the joints when it may not be apparent at the outset that a proceeding can be removed. See 28 U.S.C. § 1446(b)(3). If not with the

initial citation, which on its face demanded only discovery of documents, then later as the dispute over insurance coverage crystallized in the state court, the citation proceeding became an "action . . . for the recovery of the debt."

This new action was an "independent controversy with some new and different party" and was quite distinct from the underlying case between Rogan Shoes and Good. See *Buford*, 10 F. at 407. In that initial litigation, the issues were whether Rogan Shoes violated the federal statute on credit card receipts, and if so, how many times, and what damages should be awarded. The opposing parties were Rogan Shoes against Good on behalf of a class. In the citation proceeding, the principal issue is whether Rogan Shoes' liability insurance policies with Travelers covered the claims for its alleged violations of the federal law, with Rogan Shoes and the *Good* class members allied together against a new party, Travelers. The citation proceeding thus features a new party, a new and distinct legal claim, new issues of fact and law, and even a realignment of the original litigants. Aside from the citation action's origination in the underlying suit, it became for all intents and purposes a separate case. We believe the *Eclipse Manufacturing* court erred in concluding otherwise on nearly identical facts.

We take no issue, however, with the *Eclipse Manufacturing* court's remand in that case based on the alternative holding that aggregation was not permitted to satisfy the amount-in-controversy requirement. The court's holding

on that point is consistent with our analysis of anti-aggregation principles above. But that holding would have posed no obstacle to Travelers' ability to remove the citation action against it to federal court, thanks to the Class Action Fairness Act of 2005. That act modified diversity jurisdiction rules so as to permit federal diversity jurisdiction where diversity is only minimal but the matter in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d). Section 1332(d)(6) relaxes the general diversity rule against aggregation and "explicitly provides for aggregation of each class member's claims in determining whether the amount of controversy is at least $5,000,000." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 59 (2d Cir. 2006). The $16 million settlement that the *Good* class sought to collect exceeded the aggregate amount-in-controversy threshold, so the federal district court could have had subject matter jurisdiction. The deadline for removal, however, was 30 days after Travelers' receipt of the citation or such other documents that would have made it ascertainable that the case was removable. See 28 U.S.C. § 1446(b). That deadline has passed.

The district court's judgment of dismissal is AFFIRMED AS MODIFIED to reflect that the dismissal is for lack of jurisdiction.