In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-3332

SASKATCHEWAN MUTUAL INSURANCE CO.,

*Plaintiff-Appellant,*

*v.*

CE DESIGN, LTD.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 C 4921 — **John Z. Lee**, *Judge*.

ARGUED JANUARY 5, 2017 — DECIDED JULY 26, 2017

Before WOOD, *Chief Judge*, and MANION and WILLIAMS, *Circuit Judges*.

WOOD, *Chief Judge*. Saskatchewan Mutual Insurance (SMI) is trying to enforce a Canadian judgment against CE Design in federal court. That judgment resulted from CE Design's unsuccessful effort to enforce an earlier Illinois judgment against SMI in Saskatchewan. The question before us is whether the federal courts—the third set of tribunals that have played host

to this decade-long legal battle—have jurisdiction over the latest round. We conclude that the answer is no—an outcome that is especially appropriate given the comity concerns that pervade this litigation.

**I**

CE Design is an Illinois corporation whose business now appears to center on litigating claims under the federal Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227. It brought the present suit as a class action in Illinois state court against Homegrown Advertising, which was then a Canadian marketing firm; the complaint accused Homegrown of sending junk faxes to CE Design in violation of Illinois law and the TCPA. The two sides settled in February 2007 for $5 million plus interest and costs. Several points about the settlement are noteworthy. First, Homegrown failed to notify its insurer, SMI, about the litigation, and instead hired its own counsel in Illinois. SMI learned of the case only in May 2006. Second—and one suspects related to point one—the February 2007 settlement was structured to be enforceable only against Homegrown's commercial liability policy with SMI.

In March 2007, CE Design (to which Homegrown had assigned all its rights under the policy) filed a citation to discover assets in the Lake County, Illinois, circuit court in an effort to recover some or all of the judgment from SMI. At that point Rod Rath, SMI's Canadian attorney, wrote a letter to the circuit court advising that SMI was denying coverage. SMI took no other steps to fight the citation on the merits. On May 3, 2007, the Illinois court entered judgment for CE Design. Skirmishes over the settlement have continued in the state courts since that time. (Years later, Homegrown was dis-

solved under the law of Saskatchewan, but that is of no moment, since CE Design has been the real party in interest since the assignment.)

Our concern is with a subplot of the wider story. As the state court litigation unfolded, CE Design decided to try another tack: enforcement of the Illinois judgment in Saskatchewan, where SMI is based. The gambit failed. On January 8, 2008, the Queen's Bench, which is the court of first instance in the province, concluded that SMI had not received sufficient notice of the Illinois judgment and thus that it was unenforceable. The Saskatchewan court also awarded SMI "costs … in respect of this application … [of] $1,000." That is where matters stood for seven years, but more was to come. In June 2015, SMI revived the issue by filing a motion to enforce the Saskatchewan judgment in federal district court. We can assume that SMI is interested in more than the $1,000 (Canadian) to which the Saskatchewan judgment entitled it; recognition and enforcement of the Saskatchewan judgment may undermine the Lake County settlement. Or it may not. We may reach that potentially difficult question only if the district court had subject-matter jurisdiction over SMI's action. We thus turn immediately to that issue, as did the district court.

Two possible bases for jurisdiction have been advanced: the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), and the alienage branch of diversity jurisdiction, 28 U.S.C. § 1332(a)(2). The district court found CAFA inapplicable because the class is the defendant in this suit, and this court has held that CAFA applies only to plaintiff classes. *Travelers Prop. Cas. v. Good*, 689 F.3d 714, 723 (7th Cir. 2012). As for diversity jurisdiction, the court concluded that no individual class

member could satisfy the $75,000 amount- in-controversy requirement, and none of the exceptions to the general prohibition on aggregating claims applied. See *Snyder v. Harris*, 394 U.S. 332 (1969). Those rulings ended the case in the district court.

## II

We begin with CAFA, which authorizes federal courts to hear class actions "if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'" *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348 (2013) (quoting § 1332(d)(2)). SMI easily satisfies the first two requirements. The proposed class has 23,541 members, and there is minimal diversity because CE Design is incorporated in and has its principal place of business in Illinois, and SMI is an insurance company organized under the law of Saskatchewan. The amount in controversy is less clear cut. The settlement was for exactly $5 million, a sum which by definition does not exceed $5 million. Nor would the $1,000 (Canadian) award change things, since the Queen's Bench said it was for "costs," and CAFA applies only when "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." § 1332(d)(2).

These questions, however, are beside the point. Even if we thought that the amount-in-controversy requirement had been satisfied, SMI faces a more fundamental obstacle: CAFA "applies only where there is a plaintiff class, not a defendant class." *Good*, 689 F.3d at 723. As the case reached the federal court, SMI is the plaintiff and the class is the defendant. A straightforward application of *Good* takes CAFA jurisdiction

off the table. *Good*'s striking resemblance to this case underscores the point. There, a retailer settled with a class for $16 million plus costs but stipulated that the sum could be paid only from its insurance policies. The class then tried to enforce the settlement against the insurer in Illinois court, and the insurer tried to block the effort by filing a separate action for a declaratory judgment of non-coverage in federal court. In the latter case, the insurer alleged diversity and CAFA jurisdiction. We concluded that neither one was available and dismissed for lack of jurisdiction. *Id.* at 716–17, 723, 726.

*Good*'s application of CAFA is fully in line with the statutory text. Although Federal Rule of Civil Procedure 23 allows "[o]ne or more members of a class [to] sue *or be sued* as representative parties" on behalf of a class, the key jurisdictional language in CAFA speaks only of plaintiff classes. Compare FED. R. CIV. P. 23(a) (emphasis added) with 28 U.S.C. § 1332(d)(2). Nowhere in section 1332(d)(2) does the phrase "defendant class" appear, and references to the "defendant" or "defendants" consistently place them in opposition to the "class." See, *e.g.*, § 1332(d)(2)(A) ("any member of a class of plaintiffs is a citizen of a State different from any defendant"). If we had any remaining doubts, the enacted findings that accompanied CAFA would resolve them. Congress stressed that "abuses of the class action device" harmed "the free flow of interstate commerce," and that state courts were "bias[ed] against out-of-State defendants." Class Action Fairness Act of 2005, Pub. L. 109-002, 119 Stat 4 (2005); see also Edward A. Purcell, Jr., *The Class Action Fairness Act in Perspective: The Old and the New in Federal Jurisdictional Reform*, 156 U. Pa. L. Rev. 1823, 1876–77 (2008) ("CAFA's greatest practical significance lay in the way it tilted the playing field even more sharply in favor of corporate defendants … ."). It is true, as SMI stresses,

that Congress wanted courts to read CAFA broadly. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 618 (7th Cir. 2012); see *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). But that does not mean that we can stray from the plain language of the statute.

Perhaps recognizing this, SMI has a fallback argument: it asserts that it is the *de facto* defendant and so CAFA applies by its terms. This is so, it says, because it was the defendant in the Saskatchewan action and it is merely enforcing the resulting judgment—a ministerial matter that preserves the judgment's substance, including the parties' positions relative to the "v." We understand the point, but the reality remains that it was SMI that invoked the federal court's authority. And as this case well illustrates, registration of a judgment (or a stand-alone action on a foreign judgment) is not always a rote administrative task. *Cf. Good*, 689 F.3d at 723–26 (deeming class's citation action against insurer an independent action).

Counsel for SMI asserts that judgments entered by the courts of Canada (or other foreign countries) are entitled to "full faith and credit" in the United States, but the matter is more complicated than that. The law of Illinois governs recognition and enforcement of foreign judgments in state court, and Illinois has enacted the Uniform Foreign Money-Judgments Recognition Act, 735 ILCS 5/12-618 *et seq*., and the Uniform Enforcement of Foreign Judgments Act, 735 ILCS 5/12-650 *et seq*. Those statutes confer on judgments of foreign countries the same status as judgment of sister states, and grant those foreign judgments full faith and credit. *CE Design Ltd. v. Healthcraft Prods., Inc.*, 2017 IL App. (1st) 143000, ¶¶ 20–21. This is a matter of legislative grace on the state's part. It is notable that all efforts at the international level to create a

multilateral convention providing rules for recognition and enforcement of civil money judgments in signatory countries have failed so far. See HAGUE CONFERENCE ON PRIVATE INTERNATIONAL LAW, EXPLANATORY NOTE PROVIDING BACKGROUND ON THE PROPOSED DRAFT TEXT AND IDENTIFYING OUTSTANDING ISSUES (2016), https://assets.hcch.net/docs/e402cc72-19ed-4095-b004-ac47742dbc41.pdf (noting that work began in 1992, and discussing a new March 2016 draft). Moreover, the Illinois courts permit an inquiry into the jurisdiction of the rendering court, as well as into fraud in the inducement. See *Healthcraft Prods.*, 2017 IL App. (1st) 143000, ¶ 23.

Federal courts sitting in diversity usually apply recognition and enforcement rules of the state in which the federal court sits. See generally 18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4473 (2d ed. 2002). *Cf. Semtek Int'l Inc. v. Lockheed Martin Corp.,* 531 U.S. 497 (2001) (federal law on the effect of a federal diversity judgment borrows the state-law rule). (In federal-question cases, federal common law provides the rule.[1]) On the assumption that the federal courts of Illinois

---

[1] The leading federal case on recognition and enforcement of foreign-country judgments remains *Hilton v. Guyot*, 159 U.S. 113 (1895). Although *Hilton* held that a foreign judgment rendered in accordance with regular procedures is entitled to recognition and enforcement in U.S. courts, it qualified that rule with a reciprocity requirement. Shortly thereafter, the New York Court of Appeals held that the effect given to foreign judgments raises a question of private law on which it was entitled to chart its own course. See *Johnston v. Compagnie Generale Transatlantique*, 152 N.E. 121 (N.Y. 1926). It did so, and rejected the reciprocity rule. At this point, a majority of U.S. jurisdictions do not require reciprocity. See GARY B. BORN &

would follow Illinois law in this case—and there is no reason to think that an independent federal rule would be more generous than the state law—SMI still had real work to do as the plaintiff seeking recognition and enforcement. *Evans Cabinet Corp. v. Kitchen Int'l, Inc.*, 593 F.3d 135, 140–41 & n. 6 (1st Cir. 2010) (listing cases).

SMI's position finds little support in decided cases; it has cited only two district court decisions, and they are of dubious relevance: *Juneau Spruce Corp. v. International Longshoremen's & Warehousemen's Union*, 128 F. Supp. 697 (D. Haw. 1955); and *Sallie Mae Servicing v. Lee,* 2016 WL 613963 (D. Ariz. Feb. 16, 2016). *Juneau Spruce* describes registration as a "ministerial act" that is "different from a suit upon a judgment which is a new and independent action." 128 F. Supp. at 699. But the context was the usual one, in which one district court (in Hawaii), was deciding what to do with a judgment from another district court (in Alaska); making the case even less helpful is the fact that at the time both Alaska and Hawaii were territories, and so only one sovereign—the United States—was involved. *Juneau Spruce* had nothing to do with the proper way to handle judgments from foreign courts. *Lee* is no better, as it involved the procedure used when a state-court judgment (there, from Arizona) is assigned to the United States. 2016 WL 613963, at *2–4. Even assuming that full faith and credit applies, nothing requires the second court to follow the alignment of parties that was before the foreign court. From an administrative point of view, it is best to evaluate the new case on its own facts, which is what the district court did here.

---

Peter B. Rutledge, International Civil Litigation in United States Courts at 1031 (4th ed. 2007).

Comity considerations support the approach we are taking here. Comity "counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction" out of "a proper respect for state functions … ." *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 421 (2010) (internal quotation marks omitted). The Supreme Court has "repeatedly cautioned" that "[s]tatutes conferring federal jurisdiction … should be read with sensitivity to 'federal-state relations' and 'wise judicial administration.'" *Id.* at 423 (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)). CAFA is such a jurisdictional statute, and it seems to us neither sensitive nor wise for federal courts to insert themselves into litigation that has busied the Illinois and Saskatchewan courts for a considerable time. SMI evidently does not like how the latest phase of the case is progressing, but its remedy lies in an appeal to a higher Illinois court, not in using federal authority to transmute a $1,000 (Canadian) award into a $5 million (US) trump card. The bottom line is this: When litigation has dragged on for a decade across two countries and three jurisdictions, comity and common sense both counsel forbearance on the part of the federal courts.

### III

That leaves alienage jurisdiction, which requires complete diversity and an amount in controversy that "exceeds the sum or value of $75,000, exclusive of interest and costs." § 1332(a). There is complete diversity, as we noted earlier. The record does not reveal, however, even a chance that at least one class member has put more than $75,000 in controversy. Unlike CAFA, in ordinary diversity cases "the general rule is that the claims of multiple litigants cannot be aggregated to reach the jurisdictional amount in controversy." *Good*, 689 F.3d at 717.

Under the circumstances, SMI can invoke diversity jurisdiction only if there is an applicable exception that permits aggregation. As in *Good*, the only plausible candidate is the rule that the claims of co-parties (here, the class members) may be aggregated "when they have a 'common and undivided interest' in a 'single title or right.'" *Id.* at 718 (quoting *Snyder*, 394 U.S. at 335). *Good* explained that interests are "common and undivided" only if "each claim (1) is part of a 'common fund' and (2) could not be adjudicated on an individual basis without affecting the interests of the other claimants." *Id.* at 721.

It is possible that SMI satisfies the second criterion. The class members are entitled to a *pro rata* share of the settlement award, and so the amount each member receives will be a function of the size of the class. In that sense, their individual claims are interdependent. SMI does not, however, satisfy the first requirement. A "common fund" exists when "plaintiffs share[] a preexisting (pre-litigation) interest in the subject of the litigation." *Id.* (alteration in original) (citation omitted). In *Good*, as in our case, the class members' claim was for the policy limits of an insurance policy—a claim that at first blush might seem to qualify as a "common fund." Yet *Good* nevertheless found that the class members lacked the requisite pre-litigation interest because their claims "arose from separate transactions," namely, the printing of a receipt or receipts by the defendant retailer. *Id.* The dispositive issue was the "nature of the right asserted," not whether vindication would "lead to a single pool of money that will be allocated among the plaintiffs." *Id.* at 722 (quoting *Gilman v. BHC Sec., Inc.*, 104 F.3d 1418, 1427 (2d Cir. 1997)).

Though the offending papers here are faxes instead of receipts, that detail does not matter. Each class member's claim rests on a specific fax or faxes, and thus each claim stems from a separate transaction. It makes no difference that the class members now seek to satisfy their disparate claims from a single source. Nor are we persuaded by SMI's attempt to distinguish *Good* factually by alleging the fax problem was the result of "a single fax blast campaign." Even granting that the faxes were sent simultaneously from one source, they were received by 23,541 different entities. That defeats a finding of "common fund" for aggregation purposes.

## IV

Neither CAFA nor conventional diversity jurisdiction empowers us to hear this matter, and so we AFFIRM the judgment of the district court dismissing this case for lack of subject-matter jurisdiction.