In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-3746

GE BETZ, INC.,
a Pennsylvania corporation,

*Plaintiff-Appellant*,

*v.*

ZEE COMPANY, INC.,
a Tennessee corporation,

*Defendant-Appellee*,

and

BMO HARRIS BANK,

*Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:12-cv-07302—**Milton I. Shadur**, *Judge.*

ARGUED FEBRUARY 27, 2013—DECIDED MAY 3, 2013

Before FLAUM, SYKES, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* After winning a multi-million
dollar judgment against Zee Company in a North Carolina

state court, GE Betz discovered that Zee had tied up virtually all of its assets in a credit facility agreement with BMO Harris Bank before the entry of final judgment. As a result, GE Betz registered the North Carolina final judgment in the Circuit Court of Cook County, Illinois, Harris's principal place of business, and served Harris with a citation to discover Zee's assets. Zee subsequently removed the Cook County case to federal court based on diversity jurisdiction under 28 U.S.C. § 1441(b). But GE Betz objected to Zee's removal, arguing that it ran afoul of (1) subject-matter jurisdiction, and (2) the forum-defendant rule. The district court rejected both removal arguments, and less than three months later, dismissed GE Betz's case entirely. GE Betz filed a timely appeal. Contrary to the district court, we find that GE Betz raised a timely and sound objection to Zee's removal under the forum-defendant rule, and the district court should have remanded the case back to the Cook County Circuit Court. Without any overwhelming concerns of finality, efficiency, or judicial economy standing in our way, we now vacate the district court's dismissal order and remand the case to the district court with instructions to send GE Betz's case back to the Cook County Circuit Court.

**I**

The complicated history of this case began in April 2006, when the CEO and sole shareholder of Zee Company, Robert Bullard, decided to expand his chemical sales business into the water treatment industry. In an effort

to become competitive in water treatment, an area in which he lacked experience, Bullard hired several new employees who were currently working or had previously worked for other companies in the industry. Four of the new employees came from GE Betz, a wholly-owned subsidiary of General Electric that specializes in water treatment technology.

Unfortunately for Bullard and Zee, these four employees were still bound by non-compete agreements that they had signed while employed at GE Betz. As a result, in April 2007, GE Betz sued both Zee and its former employees in North Carolina state court for breach of contract, tortious interference with contract, and unfair trade practices. From the start, the North Carolina litigation did not go well for Zee and the former GE Betz employees. The state court issued a temporary restraining order and a preliminary injunction against Zee and the four employees within a month after the case was filed. In February 2010, the state court found all four non-compete agreements enforceable. In July 2011, the state court held Zee and the four employees jointly and severally liable for $288,297.00 in compensatory damages as a result of unfair and deceptive trade practices. Finally, in May 2012, the North Carolina court found Zee and the four employees jointly and severally liable for $5,769,903.10 in attorney fees, $864,891.00 in punitive damages, and $257,931.44 in costs. These large awards came as a result of the state court finding that Zee had "[n]ot only . . . elicit[ed], encourage[d], and compensate[d] the illegal conduct of the Individual Defen-

dants, but . . . [also had] lied about its employees activities before the litigation and throughout the course of the lawsuit, including before this Court."

Yet still the plot thickens: after the North Carolina state court had determined that Zee was liable to GE Betz and had awarded compensatory damages—but before the state court had determined punitive damages and attorney fees—Zee entered into a financial arrangement with BMO Harris Bank. On December 1, 2011, Harris agreed to extend a $22 million credit facility to Zee and its thirteen sister companies, which are also solely owned by Bullard. As part of its commitment to Harris, Zee agreed to pay a final judgment of up to $2 million in the GE Betz case, and if the final judgment exceeded $2 million, Bullard personally guaranteed the amount exceeding $2 million. In exchange for extending the credit facility, Harris placed a lien on all fourteen borrowers' "accounts, instruments, documents, chattel paper, general intangibles . . . , letter-of-credit rights, investment property, deposit accounts, inventory, equipment, commercial tort claims, fixtures, and real estate." Later in December 2011, Harris filed a UCC financing statement in Tennessee, where Zee and its co-borrowers are headquartered, in an attempt to perfect its lien.

GE Betz did not become aware of Zee's credit arrangement and Harris's ensuing lien until many months later. After the North Carolina state court entered final judgment of more than $7 million dollars in favor of GE Betz in May 2012, Zee filed a timely appeal with the

North Carolina Court of Appeals. Nonetheless, even a timely appeal "does not stay the execution of the judgment" in North Carolina "unless a written undertaking . . . by one or more sureties," such as a bond, "is executed on the part of the appellant." N.C. Gen. Stat. § 1-289(a). Despite its timely appeal, Zee never posted a bond, nor did Zee do anything else resembling a "written undertaking . . . by one or more sureties" to stay the judgment.

In its brief to our court, Zee offers no explanation for its failure to stay the North Carolina judgment, stating only that "[f]or various reasons, Zee was unable to secure a bond on appeal." Nor was Zee's explanation at oral argument any more satisfactory: despite Zee's "attempt to bond this matter," Zee blamed GE Betz for its failure, arguing that GE Betz had repeatedly objected to the chosen surety companies. Yet instead of asking the North Carolina Court to approve the bonds over GE Betz's objection, Zee decided to do nothing, offering only this excuse: "Given the vagaries of the decisions coming out of the court in North Carolina, we felt that it would have been futile to have gone before the court to have the bonds approved."

Whatever Zee's reasons for failing to post a bond, without a stay of the execution of the judgment, nothing stood in GE Betz's way from initiating the collection process against Zee. On July 6, 2012, GE Betz obtained two ex parte orders from a North Carolina trial court, which prohibited Zee from disposing of any North Carolina property and further required Zee to pay any proceeds from its North Carolina accounts

receivable into the county clerk's office. Only then did GE Betz discover Zee's credit facility agreement with BMO Harris. As part of this agreement, Zee had transferred its financial assets, including its accounts receivable, to BMO Harris, and Harris had placed a lien on seemingly all of Zee's assets.

Concerned that it may never collect anything from Zee—and that it would lose creditor priority—GE Betz registered the North Carolina judgment in the Cook County, Illinois, Circuit Court on August 24, 2012. Although BMO Harris is a Delaware corporation, Illinois is Harris's principal place of business. Thus, Illinois was the new home of some or all of Zee's assets and a place—if not the only place—where GE Betz believed it had any chance of collecting the judgment. In addition to registering the North Carolina judgment, GE Betz served Harris with a citation to discover Zee's assets, which in Illinois has the effect of freezing all of Zee's property in Harris's possession. *See* 735 Ill. Comp. Stat. 5/2-1402. Harris moved to quash the citation five days later in Cook County Circuit Court, and on September 12, 2012, Harris and GE Betz (without Zee's participation) set a briefing schedule and a hearing date on the citation action.

But at the same time that GE Betz and Harris were setting the briefing schedule and hearing date in Cook County Circuit Court, Zee was busy pursuing its own ends in federal court—unbeknownst to either GE Betz or Harris. Zee alone filed a notice of removal of the Cook County case to the federal district court in the Northern

District of Illinois on September 12, 2012. Zee alleged
that removal was proper based on diversity jurisdic-
tion, under 28 U.S.C. § 1441(b), because GE Betz (a Pennsyl-
vania corporation with its principal place of business
in Pennsylvania) was a citizen of Pennsylvania, Zee
(a Tennessee corporation with its principal place of busi-
ness in Tennessee) was a citizen of Tennessee, and
the amount in controversy well exceeded $75,000—
$7,604,083.00 at the time of removal, to be exact. Harris
neither joined in nor consented to Zee's notice of re-
moval. On the same day that Zee filed the notice, Zee
also filed an emergency motion in the federal district
court for relief from the citation issued to Harris in
the Cook County Circuit Court.

Two days later, on the morning of September 14,
2012, GE Betz, Zee, and Harris all appeared in federal
district court, and GE Betz made an oral motion to
remand the case back to the Cook County Circuit Court
based on improper removal. The district court judge
asked the parties to submit case law on the propriety of
the removal and set a time for them to return to
court that afternoon. In a matter of a few hours, GE Betz
scrambled to assemble a written memorandum, which
focused solely on the issue of subject-matter jurisdic-
tion (and not the forum-defendant rule, which is a statu-
tory problem, *see Hurley v. Motor Coach Indus., Inc.*, 222
F.3d 377, 378-80 (7th Cir. 2000)). GE Betz filed the brief
later that morning. When the parties returned in
the afternoon, the district court judge orally denied GE
Betz's motion to remand, finding Zee's removal proper.
The district court believed that the case was properly

characterized as "an independent proceeding," instead of an ancillary proceeding, which gave the federal court subject-matter jurisdiction over the case as long as the other requirements for diversity were met.

Even though GE Betz had not submitted case law on the forum-defendant rule in its late-morning filing, the district court judge brought up the potential problem posed by the rule during the afternoon hearing on September 14, 2012. The forum-defendant rule prohibits removal to federal court if "any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). With its principal place of business in Illinois, BMO Harris would run into a problem with the forum-defendant rule if it were properly characterized as a defendant (since the case was removed to the Northern District of Illinois). Instead of having the parties submit additional briefing on BMO Harris's status in the case, however, the district court judge *sua sponte* addressed the matter from the bench at the September 14th hearing. The judge orally concluded—without explanation—that Harris was not properly characterized as a defendant—or even as a "party" to the case. Harris, according to the district court judge, was merely a third-party citation respondent, so Zee's removal of the case to federal court did not run afoul of the forum-defendant rule.

Given that these rather complex jurisdictional and statutory determinations were made orally, in the course of a day, and without much briefing, GE Betz filed a

motion to reconsider two weeks later on September 28, 2012. In its memorandum accompanying the motion to reconsider, GE Betz more clearly articulated its arguments for remand back to the Cook County Circuit Court. First, GE Betz argued that the federal court lacked subject-matter jurisdiction over the case, as it was merely an ancillary proceeding "to register and enforce state court judgments." Second, GE Betz argued that even if the proceeding were independent, Harris was "the true party in interest" to the case. As such, Harris was properly characterized as a defendant, and removal ran afoul of the forum-defendant rule.

Despite the clearer articulation of GE Betz's two arguments, the district court denied the motion to reconsider on October 2, 2012. Rejecting both of GE Betz's arguments, the district court judge held that Harris was "a new and independent party" but *not* "a party in interest." As a new and independent party that had not participated in the North Carolina proceedings, Harris made the federal case sufficiently different from the North Carolina case, according to the district court. Harris's presence rendered the federal case more than just a supplemental proceeding and, since the diversity requirements were satisfied, gave the federal court subject-matter jurisdiction. Nonetheless, even though the district court recognized Harris as a party, it did not recognize Harris as a party in interest. The district court reasoned that Zee was the only party in interest (besides GE Betz) because Zee was the sole party that could be harmed by an adverse decision of the district court. According to the court, Harris was

protected from harm because any money in its possession that was "drain[ed] off" as a result of the citation action would result in Zee's "indebted[ness] to Harris in the full amount." The district court did not consider the somewhat likely event that Zee would default and never be able to satisfy its indebtedness to Harris.

Meanwhile, as GE Betz was unsuccessfully trying to get the case remanded back to the Cook County Circuit Court, Zee and Harris—now apparently collaborating on their legal strategy—were busy pursuing an emergency motion for relief from the citation served on Harris while the case was in the Cook County Circuit Court. On September 20, 2012, the district court granted a temporary restraining order (TRO) modifying the Cook County citation, which partially lifted the freeze on Zee's accounts at Harris and allowed Zee to pay its employees and necessary suppliers. Because Harris had filed UCC financing statements covering all of Zee's assets in December 2011—before the North Carolina court entered final judgment in the GE Betz case—the district court judge believed that the "first in time, first in right" rule controlled, and Harris had a priority security position over GE Betz with regard to Zee's assets. Unless GE Betz could establish an exception to this general rule, the district court thought that Harris and Zee were likely to succeed on the merits.

Over the course of the next several months, GE Betz, Zee, and Harris continued to fight ruthlessly in the federal district court over both the priority and the propriety of Harris's credit agreement with Zee.

Indeed, the district court docket demonstrates ninety-eight entries in the two-and-a-half months following the case's removal on September 12, 2012. In addition to the existing citation that GE Betz had served on BMO Harris Bank while the case was in Cook County, GE Betz served a second citation directly on Zee. Moreover, GE Betz aggressively sought discovery about the credit arrangement between Zee and Harris, in an effort to gather evidence to support its multiple theories of why its North Carolina judgment should jump ahead of Harris's lien in terms of creditor priority. GE Betz's theories included that payment of the GE Betz judgment was a stipulation of the credit agreement, that Harris had failed to perfect its lien over all Zee's assets, that Harris lost its priority status once it declined to enforce its rights and remedies against Zee, and that the arrangement between Harris and Zee constituted a fraudulent transfer. In response, Harris and Zee argued that GE Betz's theories were groundless, and additional discovery was unwarranted. In the midst of these battles over discovery, it appears the only thing that the parties *could* agree on was an order to extend the September 20th TRO until the district court could "actually set up a schedule for meaningful determination."

That "meaningful determination" came on November 28, 2012—less than three months after Zee removed the case to federal district court. At a status hearing that morning, the district court declared, "[I]t is time to call a halt to all this. . . . Betz . . . begins with a false premise. And guess what? That ends with a false conclusion." The district court judge did not believe that

GE Betz had adequately established any of the exceptions to the general rule of "first in time, first in right." Dismissing GE Betz's theories as "fallacious," the judge characterized them as requiring Harris "to act contrary to its own economic interest." Furthermore, the district court judge found "nothing to suggest . . . anything other than arm's length arrangements . . . between Harris and Zee." All in all, the judge found GE Betz's attempts to jump ahead of Harris "absurd," and as a result, quashed both the citation served on Harris and the citation served directly on Zee, and dismissed the case. GE Betz filed a timely appeal of all the district court's decisions.

Before we can address any of the district court's later merits-based decisions, we must first review the district court's earlier denial of GE Betz's motion to remand, as this motion questioned the basis for subject-matter jurisdiction in federal court. *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). We review a district court's denial of a motion to remand *de novo*. *Id*.

## II

GE Betz advances two arguments regarding the impropriety of Zee's removal. First, GE Betz argues that the federal court lacks subject-matter jurisdiction over such an action. Second, GE Betz argues that even if the federal court had subject-matter jurisdiction, Zee's removal violated the forum-defendant rule, and the action should have been remanded back to the Cook County Circuit Court upon GE Betz's timely objection.

Subject-matter jurisdiction is our foremost concern; without it, "the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868)). Accordingly, we begin by addressing GE Betz's subject-matter jurisdiction argument.

GE Betz's subject-matter jurisdiction argument is, in reality, twofold. Although GE Betz admits that the case complies with the requirements of diversity jurisdiction under 28 U.S.C. § 1441(b), it argues that the case runs into trouble with two other statutes that limit the subject-matter jurisdiction of federal courts, namely 28 U.S.C. § 1441(a) and 28 U.S.C. § 1963. With respect to 28 U.S.C. § 1441(a), GE Betz contends that the Cook County Circuit Court case was not a "civil action brought in a State court of which the district courts of the United States have original jurisdiction," and therefore, was not removable. We have long interpreted § 1441(a) "to allow removal only of 'independent suits' but not ancillary or 'supplementary' proceedings." *Travelers Property Cas. v. Good*, 689 F.3d 714, 724 (7th Cir. 2012) (quoting *Fed. Sav. & Loan Ins. Corp. v. Quinn*, 419 F.2d 1014, 1018 (7th Cir. 1969)). This prudential interpretation of § 1441(a), which dates back as early as *Barrow v. Hunton*, 99 U.S. 80, 83 (1878), "seeks to avoid the waste of having federal courts entertain satellite elements of pending state suits and judgments." *Travelers*, 689 F.3d at 724 (quotations and citations omitted). According to GE Betz, the Cook County Circuit Court case was nothing more than a satellite element of the pending North Carolina state court suit; it was merely an action

to enforce the North Carolina judgment. As a result, GE Betz argues that § 1441(a) prohibited removal to federal court.

GE Betz's first jurisdictional argument has some merit—especially considering that the North Carolina suit remains pending in the state court of appeals, and a decision vacating GE Betz's judgment there would render the instant matter moot. To be sure, this proceeding is similar to the North Carolina case, and our court has never developed a "bright-line formula . . . for separating the independent and removable sheep from the ancillary and nonremovable goats." *Travelers*, 689 F.3d at 724. Still, we believe that the matter before us contains one distinction that places it squarely on the side of the removable sheep: the presence of BMO Harris.

BMO Harris has been heavily involved in this matter since its inception in the Cook County Circuit Court. It first came into the proceeding when GE Betz served it with a citation to discover Zee's assets. Since then, Harris has sought to quash the citation, vigorously asserting "the priority of its security interest in Zee's assets and its right of setoff." In contrast, BMO Harris is wholly uninvolved in the underlying North Carolina case. Harris's presence also renders the subject of the dispute in this case completely different from the subject of the dispute in the North Carolina case. In North Carolina, GE Betz and Zee are fighting about covenants not to compete and trade practices. Here, GE Betz, Zee, and BMO Harris are fighting about Harris's priority as Zee's secured creditor. As we pointed out in

*Travelers*, 689 F.3d at 724 (quoting *Buford v. Strother*, 10 F. 406, 407 (C.C.D. Iowa 1881)), " 'where the supplemental proceeding is not merely a mode of execution or relief, but where it, in fact, involves an independent controversy with some new and different party, it may be removed into the federal court.' " In the instant proceeding, we have a new and different party (BMO Harris) as well as an independent controversy (the priority of Harris's lien). Therefore, under *Travelers*, we have an action that was removable under 28 U.S.C. § 1441(a).

Although we reject the argument that Zee's removal violated 28 U.S.C. § 1441(a), Zee "is not out of the jurisdictional woods." *Abbott Labs. v. CVS Pharmacy, Inc.*, 290 F.3d 854, 858 (7th Cir. 2002). For GE Betz makes a second jurisdictional argument based on 28 U.S.C. § 1963. Section 1963 provides that a "judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade *may be registered*" in a federal court (emphasis added). GE Betz argues that this language only permits a federal court to register foreign judgments from other federal courts. Judgments from state courts, according to GE Betz's interpretation of § 1963, may not be registered in a federal court. To support its interpretation, GE Betz cites a host of district court decisions, including *Polo Realty Inc. v. Kruse*, 2010 WL 3087417, at *2, *5 (N.D. Ind. Aug. 2, 2010) (concluding that federal courts "cannot enforce a state court judgment," even though there is "no authority in the Seventh Circuit addressing this question"); *Marbury*

*Law Group, PLLC v. Carl*, 729 F. Supp. 2d 78, 83 (D.D.C. 2010) (finding that a federal court "lacks jurisdiction to enforce state court judgments"); and *Euro-Am Coal Trading, Inc. v. James Taylor Mining, Inc.*, 431 F. Supp. 2d 705, 707 (E.D. Ky. 2006) (holding that "the registration procedures of 28 U.S.C. § 1963 contain jurisdictional limitations that prohibit *federal* courts from registering *state* court judgments"). Since 28 U.S.C. § 1441(a) limits removal to actions in "which the district courts of the United States have original jurisdiction," parties can only remove matters that could have originally been brought in federal court. GE Betz argues that this case is, at heart, the registration of a foreign state-court judgment, which under several district courts' interpretations of 28 U.S.C. § 1963, could not have been originally brought in federal court. As a result, GE Betz contends that removal was improper.

GE Betz's argument invites us to join several district courts—at least one of which is in our own circuit—in holding that 28 U.S.C. § 1963 bars federal courts from enforcing judgments rendered by state courts. We decline this invitation. Although the language of § 1963 is somewhat ambiguous, GE Betz's interpretation requires reading additional words into the statute. GE Betz insists that § 1963 explicitly allows for the registration of federal court judgments, and thus, implicitly bars the registration of state court judgments. But we note that neither the word "state" nor the word "federal" appear in the text of § 1963.

It is true that only the federal system has a "bankruptcy court" and a "Court of International Trade." But every

state system has the equivalent of a "district court" and a "court of appeals"—even if the state-court versions of these courts go by a different name. Moreover, some state-court systems actually use the same names as the federal-court system; Minnesota and Virginia, for example, refer to their trial courts as "district courts" and their appellate courts as "courts of appeals." *See, e.g.,* Minnesota Judicial Branch, *Minnesota District Courts, available at* http://www.mncourts.gov/?page=238 (last visited May 1, 2013); Office of the Executive Secretary of the Supreme Court of Virginia, *Virginia's Judicial System, available at* http://www.courts.state.va.us/courts/gd.html (last visited May 1, 2013). Thus, it is not clear that the language of § 1963 refers solely to judgments rendered by federal courts.

And even if § 1963 did refer only to judgments rendered by federal courts, the statute does not contain any other language barring federal courts from enforcing state-court judgments. Section 1963 merely states that a "judgment . . . entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered." Section 1963 could have said, "*Only a* judgment . . . entered in any *federal* court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered"—but it does not. Nor is there any other language in § 1963 that suggests that a state-court judgment meeting the other requirements for federal jurisdiction may not be enforced by a federal court. Reading a bar against the enforcement of state-court judgments by federal courts requires reading additional words into

§ 1963 that are not there. A court has "'no right, in the guise of construction of an act, to either add words to or eliminate words from the language used by congress.'" *King v. I.R.S.*, 688 F.2d 488, 491 (7th Cir. 1982) (quoting *DeSoto Sec. Co. v. Comm'r*, 235 F.2d 409, 411 (7th Cir. 1956)). We have no right to add words into the text of § 1963, and we certainly have no right to add a restriction that is not already there.

As a result, we conclude that § 1963 does not prohibit the removal of all matters related to the registration of state-court judgments; more specifically, we conclude that § 1963 does not prohibit the removal of the citation proceeding initiated by GE Betz. We acknowledge that this conclusion runs contrary to previous interpretations by several district courts. But we note that GE Betz has not cited, nor have we been able to locate, any decisions by sister circuits that interpret § 1963 as barring post-judgment proceedings of the sort presented here. Moreover, we are not concerned that our refusal to read a bar against the enforcement of state-court judgments into 28 U.S.C. § 1963 will open the flood-gates to new litigation in federal court. In order to be enforceable by a federal court, a state-court judgment enforcement proceeding must still meet the other requirements for federal jurisdiction, including the amount in controversy and the diversity requirements under 28 U.S.C. §§ 1332 and 1441(b) as well as the independent proceeding requirement under 28 U.S.C. § 1441(a). We believe that the § 1441(a) independent proceeding requirement particularly limits the number of state-court judgments that a federal court may enforce, as

most state-court judgment enforcement proceedings are more properly characterized as ancillary or supplementary suits. As a result, we expect that the instant matter is not the norm, but rather one of the rare judgment-enforcement proceedings that is sufficiently independent from the underlying state-court proceedings to give the federal court jurisdiction under § 1441(a).

## III

Having satisfied ourselves that federal court jurisdiction is secure under 28 U.S.C. § 1441(a) and not precluded by 28 U.S.C. § 1963, we now turn to GE Betz's second argument why Zee's removal to federal court was improper: the forum-defendant rule. Codified under 28 U.S.C. § 1441(b)(2), the forum-defendant rule prohibits removal "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." The purpose of this rule is "to preserve the plaintiff's choice of a (state) forum, under circumstances where it is arguably less urgent to provide a federal forum to prevent prejudice against an out-of-state party." *Hurley*, 222 F.3d at 380. Although the forum-defendant rule arises under 28 U.S.C. § 1441—which, as we know from the discussion above, contains some jurisdictional requirements—the forum-defendant rule itself is nonjurisdictional. *See Hurley*, 222 F.3d at 380 (endorsing "the longstanding line of authority that holds that the forum defendant rule is nonjurisdictional"). As a result, noncompliance with the

forum-defendant rule is a statutory, not a jurisdictional, defect. *Holmstrom v. Peterson*, 492 F.3d 833, 838-40 (7th Cir. 2007) (discussing the reasons why the forum-defendant rule is a statutory defect).

This distinction between statutory and jurisdictional defects is important because it determines when a plaintiff may object to removal. Of course, a plaintiff may object to removal based on a jurisdictional defect at any time. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) (reminding that "subject-matter delineations must be policed by the courts on their own initiative even at the highest level"). But the timeframe for objecting to removal based on a statutory defect is much smaller. Under 28 U.S.C. § 1447(c), a plaintiff's "motion to remand the case on the basis of any defect other than lack of subject-matter jurisdiction must be made within 30 days after the filing of the notice of removal." The reason behind this thirty-day time limit is "to 'prevent a party who is aware of a defect in removal procedure from using the defect as insurance against later unfavorable developments in federal court.'" *Holmstrom*, 492 F.3d at 838-39 (quoting *In re Shell Oil Co.*, 932 F.2d 1518, 1522 (5th Cir. 1991)). Consequently, if a plaintiff fails to raise a forum-defendant objection within thirty days of removal, the plaintiff waives the right to raise the objection later. *Hurley*, 222 F.3d at 378-80.

With this general overview of the rule in mind, we turn to the specifics of GE Betz's forum-defendant argument. GE Betz asserts that Zee's removal to the federal district court in the Northern District of Illinois violated

the forum-defendant rule because BMO Harris was both a defendant and a citizen of the forum. (Recall that Harris's principal place of business is Illinois.) GE Betz's forum-defendant objection was timely under 28 U.S.C. § 1447(c); it raised the argument in its motion to reconsider, filed sixteen days after Zee's removal. Still, GE Betz's argument only holds water if (1) BMO Harris is properly considered a defendant to this action, and (2) the forum-defendant rule can pose a problem even when a non-forum defendant removes the case without the participation of the forum defendant. We address each argument in turn.

**A**

Zee and BMO Harris spent much of oral argument addressing the first issue, insisting that Harris is not a "defendant" for the purposes of 28 U.S.C. § 1441(b)(2). According to them, Harris is merely a "third-party citation respondent" under Illinois law. Harris and Zee admit that this status makes Harris a "party in interest" to the suit, but they contend that Harris's status does not rise to the level of a defendant. In order to decide whether Harris is properly classified as a defendant, we now consider the governing law, and how this law informs Harris's status in the present action.

Because we sit in diversity in the present action, "we are required to apply the substantive law of the forum state . . . as we believe the highest court of the state would apply it." *Wolverine Mut. Ins. v. Vance ex rel. Tinsley*, 325 F.3d 939, 942 (7th Cir. 2003); *see also Erie R.R. Co. v.*

*Tompkins*, 304 U.S. 64, 78 (1938). Therefore, we are required to apply the substantive law of Illinois that governs citation actions to discover assets. At the same time, we must apply federal procedural law to this case. *See Erie*, 304 U.S. at 78; *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008). Although formally titled as a citation action to discover assets, this case is, at bottom, an enforcement action to collect a money judgment. Fed. R. Civ. P. 69(a)(1), which governs the enforcement of money judgments in federal court, provides that the "procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located." Illinois is the state where the federal district court is located, so we look again to Illinois law for the procedural rights and processes accompanying a citation to discover assets. We endeavor to provide the same procedural rights and processes that the parties would enjoy in Illinois state court here in federal court; however, we need not "apply[] every jot and tittle of Illinois procedural law." *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir. 1993); *see also Star Ins. Co. v. Risk Mktg. Grp. Inc.*, 561 F.3d 656, 661 (7th Cir. 2009) (holding that a "district court was correct in turning to state law" because under Rule 69, "the Federal Rules of Civil Procedure are not strictly applicable to [Illinois] supplementary proceedings"); *Vukadinovich v. McCarthy*, 59 F.3d 58, 62 (7th Cir. 1995) (noting that Rule 69 "governs collection proceedings in the federal courts, [and] adopts whatever procedures are followed by the

state courts in the state in which collection is sought"). Instead, our principal objective under Rule 69 is to "conform[] collection proceedings to state law." *Star*, 561 F.3d at 661 (quoting *Matos v. Richard A. Nellis, Inc.*, 101 F.3d 1193, 1195 (7th Cir. 1996)).

With this framework in mind, we turn now to study both the substantive and procedural rights accorded the parties to an Illinois citation action to discover assets. Specifically, we seek to determine the procedural rights, the substantive rights, and the remedies to which parties to a citation action are entitled. Once we understand the specifics of an Illinois citation action, we will be in a better position to assess whether a third-party citation respondent like BMO Harris is properly classified as a defendant for purposes of federal removal law.

Often referred to as "supplementary proceedings," citations to discover assets are the "dominant procedure of the modern era" used in Illinois to enforce money judgments. Robert G. Markoff, *Survey of Illinois Law: Enforcement of Judgments*, 33 S. Ill. L. Rev. 631, 639-40 (Summer 2009). Two provisions of Illinois law govern citation actions. The first provision, 735 Ill. Comp. Stat. 5/2-1402, provides in part:

> A judgment creditor, or his or her successor in interest when that interest is made to appear of record, is entitled to *prosecute* supplementary proceedings for the purposes of examining *the judgment debtor or any other person to discover assets* or income of the debtor not exempt from the

> enforcement of the judgment. . . . A supplementary proceeding shall be commenced by the service of a citation issued by the clerk.

735 Ill. Comp. Stat. 5/2-1402(a) (emphasis added). The second provision, Ill. Comp. Stat. S. Ct. R. 277, outlines the procedures of a citation action in more detail. It requires the party to whom the citation is directed, whether the judgment debtor or a third party, "to appear for examination . . . concerning the property or income of or indebtedness due the judgment debtor." Ill. Comp. Stat. S. Ct. R. 277(c)(3). The rule also allows the party bringing the citation action to demand that the judgment debtor or third party produce "any books, papers, or records in his or its possession or control which have or may contain information concerning the property or income of the debtor." Ill. Comp. Stat. S. Ct. R. 277(c)(4). Furthermore, the rule provides for discovery and a hearing on the citation, allowing "[a]ny interested party"—including a third-party citation respondent—to "subpoena witnesses and adduce evidence as upon the trial of any civil action." Ill. Comp. Stat. S. Ct. R. 277(e).

At the conclusion of these citation proceedings, the trial court may order the party to whom the citation is directed to turn over the judgment debtor's assets to the judgment creditor. 735 Ill. Comp. Stat. 5/2-1402(b); *see also Pyshos v. Heart-Land Development Co.*, 630 N.E.2d 1054, 1057 (Ill. App. Ct. 1994). Regardless of whether the trial court decides to order the turnover of assets, the trial court's final order in a citation pro-

ceeding is appealable by both the creditor and the party to whom the citation is directed. Ill. Comp. Stat. S. Ct. R. 304(b)(4).

Not surprisingly, our court has previously encountered Illinois citation actions. Indeed, in *Resolution Trust*, 994 F.2d at 1223, we even provided a brief summary of the rights of the parties in a citation action:

> The relevant provisions of Illinois law . . . [for citation actions:] Entitle the judgment creditor to question the judgment debtor, or anyone else who might have relevant information, under oath regarding the existence and whereabouts of assets that might be used to satisfy the judgment. . . . Entitle any third party who claims an interest in those assets to appear and be heard on his claim. Empower the court to order the debtor to turn over property to the creditor to satisfy the judgment.

Moreover, we held in *Dexia Crédit Local v. Rogan* that a bench trial was within "the proper scope" of a citation action since Illinois law "'give[s] the court broad powers to compel the application of discovered assets or income in order to satisfy a judgment.'" 629 F.3d 612, 624 (7th Cir. 2010) (quoting *Dowling v. Chi. Options Assocs., Inc.*, 847 N.E.2d 741, 746 (Ill. App. Ct. 2006)). Distinguishing it from "a mere discovery statute," we further observed that 735 Ill. Comp. Stat. 5/2-1402 "permit[s] the court *to determine the rights of third parties.*" *Id.* (emphasis added).

Our previous examinations of Illinois citation proceedings in *Resolution Trust* and *Dexia* are certainly helpful

in teasing out the substantive and procedural rights accorded the parties. But perhaps the most helpful examinations of these proceedings come from the Illinois state appellate courts. Regarding the scope of permissible discovery by the judgment creditor, more than one appellate court has held that extensive searching for assets—even described as "a 'fishing expedition'"—is permissible against a third-party citation respondent "if it is based on a belief that such assets are in the third party's possession." *Regan v. Garfield Ridge Trust & Sav. Bank*, 617 N.E.2d 818, 820 (Ill. App. Ct. 1993) (quoting *Federal Loan Corp. v. Harris*, 308 N.E.2d 125, 127 (Ill. App. Ct. 1974)). In addition to these extensive discovery rights, the parties to a citation action are entitled to broad procedural safeguards. According to *Workforce Solutions v. Urban Servs.*, 977 N.E.2d 267, 275-76 (Ill. App. Ct. 2012) (emphasis added), both 735 Ill. Comp. Stat. 5/2-1402(a) and Ill. Comp. Stat. S. Ct. R. 277

> impos[e] *a requirement on the court to conduct a trial or evidentiary hearing* to determine ownership of a third party's assets where both the judgment creditor and the third-party citation respondent claim entitlement to those assets. . . . *Failure to do so is reversible error. . . .* We specifically held that *it is insufficient for the court to decide the matter based solely on the arguments of counsel* without hearing evidence on a fraudulent conveyance allegation. . . . In order for a dispute to arise, the third-party citation respondent also must have made a claim on the asset at some point in the proceedings. Resolving that dispute raises a question of

fact requiring an evidentiary hearing regardless of which party raises it. *Cf. Harmon v. Ladar Corp.,* 557 N.E.2d 1297, 1299 (Ill. App. Ct. 1990) ("if the judgment creditor claims entitlement to the assets of a third party and the third party contests the claim, *a trial must be held*").

In sum, the above rules and cases tell us that a judgment creditor in Illinois, like GE Betz, is entitled to "prosecute" a citation action to discover assets against a third party, like BMO Harris, as long as the creditor reasonably believes that the third party holds a judgment debtor's assets. 735 Ill. Comp. Stat. 5/2-1402(a). After bringing the citation action, the creditor is entitled to search through the third party's books, papers, and records to locate the debtor's assets and to determine the validity of the third party's claim to those assets. *Regan*, 617 N.E.2d at 820. The creditor is then entitled to a trial or evidentiary hearing on the evidence it obtains from its discovery efforts. *Workforce*, 977 N.E.2d at 275-76. If the creditor successfully proves at trial that it has the superior claim to the debtor's assets, the court is empowered to order the third party to turn over the debtor's assets to the creditor. 735 Ill. Comp. Stat. 5/2-1402(b); *Resolution Trust*, 994 F.2d at 1223. And if any party—whether the judgment creditor or the third party—is dissatisfied with the outcome of the citation proceedings, that party has the right to appeal the outcome. Ill. Comp. Stat. S. Ct. R. 304(b)(4).

With this background on Illinois citation actions, we now return to the issue at hand: is a third-party citation

respondent in such an action properly characterized as a "defendant" under 28 U.S.C. § 1441(b)(2)? Unfortunately, the term "defendant" is not defined within § 1441, and, surprisingly, very few courts have had to grapple with its definition in the past. The Supreme Court has only briefly considered the meaning of the term as used within § 1441, concluding that "the word 'defendant' as there used is directed toward more important matters than the burden of proof or the right to open and close." *Chicago, R.I. & P.R. Co. v. Stude*, 346 U.S. 574, 579 (1954) (holding that the labels assigned to parties by state law do not matter because "federal law determines who is plaintiff and who is defendant" for the purposes of removal). In addition, the Eleventh Circuit has suggested that a defendant under § 1441 is a party whose interests are in opposition to the plaintiff's interests. *See City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1314 (11th Cir. 2012) (noting that "[w]here the parties' interests are the same, we have held that those parties must be aligned together [for the purposes of removal] and have reversed a district court's failure to do so, even where the parties' interests were in opposition outside of the issues raised in the subject action").

Without much direction from either the Supreme Court or our sister circuits, we turn to dictionaries for additional guidance on the meaning of the word "defendant." *Black's Law Dictionary* does not offer much help, defining a civil defendant as a "person sued in a civil proceeding." *Black's Law Dictionary*, "Defendant" (9th ed. 2009); *see also Black's Law Dictionary*, "Sue" (9th ed. 2009) (defining to "sue" as "[t]o institute a lawsuit against

(another party)"). The *Merriam-Webster Dictionary* provides slightly more assistance, describing a defendant as "a person required to make answer in a legal action or suit." *Merriam-Webster Dictionary Online*, *available at* http://www.merriam-webster.com/dictionary/defendant (last visited May 1, 2013).

Although the guidance provided by dictionaries and prior case law is not substantial, it all points in the same direction—indicating that a third-party citation respondent in an Illinois citation action is a defendant. The Supreme Court indicated in *Chicago, R.I. & P.R. Co.*, 346 U.S. at 579, that a party can be a "defendant" for the purposes of § 1441 even if state law labels the party with another name. As a result, the fact that Illinois law refers to parties like Harris as "third-party citation respondents" instead of "defendants" is not determinative of a party's status under federal removal law. What is determinative—as the Eleventh Circuit has previously held in *Vestavia Hills*, 676 F.3d at 1314—is the alignment of the parties' interests. Here, Harris's interests are clearly in opposition to the interests of the plaintiff, GE Betz. Moreover, we note that third-party citation respondents like BMO Harris fit all dictionary definitions of the word defendant. When GE Betz served Harris with a citation to discover assets, it instituted a legal action to recover assets from Harris. As a result of being served with the citation, Harris was required to make answer in the legal action in order to retain the contested assets.

Furthermore, throughout our inquiry into whether a third-party citation respondent in an Illinois citation

action is a "defendant" for the purposes of 28 U.S.C. § 1441, we have been continually reminded of the famous duck test: "if it walks like a duck, swims like a duck, and quacks like a duck, it's a duck." *Lake v. Neal*, 585 F.3d 1059, 1059 (7th Cir. 2009). If something has all of the qualities of a duck, then inductive reasoning tells us that it must, in fact, be a duck. Similarly, if a participant in a judicial proceeding has all the qualities of a defendant, then inductive reasoning tells us that the participant must, in fact, be a defendant.

And indeed, a third-party citation respondent in Illinois has all of the qualities traditionally associated with a defendant. A third-party citation respondent is initially served with notice of the action against it; it is in direct opposition to the party bringing the action (the judgment creditor); it has the opportunity to vindicate its rights at trial; and it has the right to appeal any adverse judgment against it. There is no reason to think that, in drafting § 1441, Congress intended the word "defendant" to be understood in some unusual or extraordinary way. Therefore, we hold that a third-party citation respondent in an Illinois citation action is a "defendant" for the purposes of 28 U.S.C. § 1441. (Note that, in spite of our painstaking efforts to reach this holding, it is not a far cry from our previous characterizations of third-party citation respondents under Illinois law. In fact, we have previously referred to a third-party citation respondent as "a party to the postjudgment proceeding." *See Resolution Trust*, 994 F.2d at 1224 (finding a third-party citation respondent's motion to intervene in the citation

action unnecessary since "she was already a party to the postjudgment proceeding and had been from the outset").)

Despite the fact that BMO Harris clearly possesses all the qualities of a defendant, at oral argument, both Zee and Harris likened Harris's status to that of a third-party defendant, who—according to our precedent—is not generally authorized to remove a case to federal court under 28 U.S.C. § 1441(c). *See Thomas v. Shelton*, 740 F.2d 478, 487 (7th Cir. 1984) (concluding that "in the broad run of third-party cases . . . the third-party defendant cannot remove the case under section 1441(c)"). We note, as an initial matter, that this argument is not on point. The instant action was removed under § 1441(a), not § 1441(c), since all claims in this case came within the original jurisdiction of the federal court.

Even if *Thomas* were on point, it makes no sense to liken Harris to a third-party defendant. A third-party defendant is a "party brought into a lawsuit by the original defendant." *Black's Law Dictionary*, "Third-Party Defendant" (9th ed. 2009). But Harris was not brought into this suit by the defendant, Zee; Harris was brought into this suit by the plaintiff, GE Betz—in the same manner that a plaintiff would bring any original defendant into a lawsuit. Similarly, as we noted in *Thomas*, "[t]he most common third-party claim is a claim for indemnity, that is, a claim that should the defendant (third-party plaintiff) be held liable to the plaintiff, the third-party defendant must reimburse the defendant for the cost of satisfying the plaintiff's judg-

ment." 740 F.2d at 486. A third-party defendant stands in opposition to the original defendant (the third-party plaintiff). Harris, in contrast, stands side-by-side with Zee. Harris and Zee appear to be in complete agreement with respect to this case; they are working together—even coordinating litigation strategies—to fight off GE Betz.

Harris and Zee's reliance on *Thomas* is clearly misplaced, but they make other arguments as to why Harris is not a "defendant" to the present suit. They ignore the Supreme Court's holding in *Chicago, R.I. & P.R. Co.*, 346 U.S. at 579, that the label assigned by state law to a party is not dispositive as to whether that party is a defendant for the purposes of 28 U.S.C. § 1441. Harris and Zee instead point to our holding in *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 369 (7th Cir. 1993), arguing that the definition of "defendant" in 28 U.S.C. § 1441(b) is very narrow and does not include "[n]ominal or formal parties." According to *Shaw*, a "defendant is nominal if there is no reasonable basis for predicting that it will be held liable." *Id*. There are two reasons why Harris is more than just a "nominal or formal" party to this suit. First, Harris does not fit the *Shaw* definition of a nominal party. On the contrary, there is a very reasonable basis for predicting that Harris will be held liable to GE Betz. If, for example, GE Betz were to prove its fraudulent transfer claim successfully, then Harris would be liable for the funds that Zee fraudulently transferred to it. Second, recalling our discussion from Section II, Harris's presence is the only reason why this case was removable to federal court in the first place.

Without Harris, this matter would have been a purely ancillary matter to the North Carolina suit, and 28 U.S.C. 1441(a) would bar removal to federal court. *Travelers*, 689 F.3d at 724. Consequently, it is difficult to reduce Harris to a mere nominal party in this suit.

Along these lines, we are troubled by the way in which Zee and BMO Harris are talking out of both sides of their mouths. They play up Harris's status as a "new and independent party" to support removal under § 1441(a), but in the same breath, they discount Harris's status as a "nominal party" to avoid a conflict with § 1441(b)(2) and keep the case in federal court. An examination of Zee's brief to this court demonstrates just how contradictory their arguments are. On one page, Zee argues that "Harris is still a new party with a new claim and a new controversy—which party has lien priority over Zee's assets," in order to get around the § 1441(a) jurisdictional problem. *But on the very next page*, Zee argues that "Zee was the only named de-fendant . . . and the only party against whom liability could be found," in order to avoid the § 1441(b)(2) forum-defendant rule problem. As we have stated before, parties "cannot have it both ways" in order to ensure a case remains in their desired forum; allowing parties to have it both ways "would be unjust." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 512-13 (7th Cir. 2006) (rejecting a plain-tiff's attempt to argue that the value of her case was less than $75,000 in order to defeat removal, while simultaneously seeking to preserve her right to recover more than $75,000 upon remand to the state court). In

spite of the attempts to characterize Harris otherwise, Harris is a defendant to this action.


**B**

With regard to the second issue—whether it matters that only the non-forum defendant, Zee, consented to the removal of this case—the parties spend a great deal of time arguing about the importance of who removed the case, as though it makes a difference now. It could have made a difference during the first thirty days following Zee's removal. 28 U.S.C. § 1441(a) "require[s] that all defendants (or none) join a notice of removal." *McMahon v. Bunn-O-Matic Corp.*, 150 F.3d 651, 653 (7th Cir. 1998). Here, there were two defendants, Zee and BMO Harris, but only one defendant, Zee, joined the notice of removal. Harris's failure to consent to Zee's removal constituted a removal defect. *Id*. But such a defect is statutory, not jurisdictional. *Id*. Because GE Betz failed to raise this defect in either its initial motion to remand or its motion to reconsider, GE Betz waived it after thirty days. *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003). Nevertheless, even if BMO Harris had properly consented to Zee's removal of this case, the forum-defendant rule would still stand in the way of removal. It is true that only Zee removed the case, and Zee is not a forum defendant. But, as our analysis in Section III.A demonstrated, Harris is a forum defendant. 28 U.S.C. § 1441(b)(2) clearly prohibits removal "if *any* of the parties in interest properly joined and served as

defendants is a citizen of the State in which such action is brought" (emphasis added). Harris and Zee cannot run around the forum-defendant rule by having only the non-forum defendant remove the case.

In sum, this case was sufficiently independent of the North Carolina suit to be removable under 28 U.S.C. § 1441(a). If neither Harris nor Zee had been citizens of Illinois, then this case would have been properly removed to federal court. But Harris is a citizen of Illinois, and removal to the federal district court violates the forum-defendant rule, 28 U.S.C. § 1441(b)(2). Because GE Betz pointed out Harris's citizenship to the district court within thirty days—and thus, raised a timely objection to removal based on the forum-defendant rule—the federal district court should have remanded this case back to the Cook County Circuit Court.

## IV

As we know from the procedural posture of this case, however, the federal district court did not remand the case back to the Cook County Circuit Court. It retained the case for two months after denying GE Betz's motion to reconsider. During that time, the district court granted a TRO that partially lifted the freeze on Zee's accounts at BMO Harris, and the three parties filed an abundance of discovery-related motions. The case concluded on November 28, 2012 without the district court judge addressing many of these motions. Deciding that the "first in time, first in right rule" was dispositive

of all issues in the case, the district court judge quashed the citations and dismissed the case.

Despite the fact that the federal district court improperly retained this case, Zee and BMO Harris urge that we need not remand the case back to Cook County now. Relying on *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 75 (1996), Zee and Harris argue that "considerations of finality, efficiency, and economy" overwhelm the district court's incorrect decision on the motion to remand because the case has subsequently proceeded to a final determination on the merits. But the way in which *Caterpillar* proceeded to a final determination is very different from the way in which the present case proceeded to a final determination.

In *Caterpillar*, a district court improperly denied a plaintiff's motion to remand the case back to state court. The plaintiff correctly argued that the parties lacked complete diversity: one of the initial defendants was a citizen of the same state as the plaintiff. Despite this rather obvious flaw in subject-matter jurisdiction, the district court denied the plaintiff's motion to remand, and the case remained in federal court. *Id*. at 64-66. During the course of the next four years, the plaintiff settled with the non-diverse defendant. Once the non-diverse defendant dropped out of the case, diversity was complete. *Id*. at 65-67. The case proceeded to a jury trial, and the jury returned a verdict for the remaining defendant. The plaintiff appealed, arguing that the district court lacked subject-matter jurisdiction to enter judgment for the defendant since the court had

lacked subject-matter jurisdiction at the time of the case's removal. *Id.* at 67. The Supreme Court rejected the plaintiff's argument, holding that "a district court's error in failing to remand a case improperly removed is not fatal to the ensuing adjudication if federal jurisdictional requirements are met at the time judgment is entered." *Id.* at 64. Given that the case had gone to a jury trial—not to mention that the case had been in federal court for more than seven years by the time it reached the Supreme Court—the Supreme Court believed that "considerations of finality, efficiency, and economy [were] overwhelming." *Id.* at 75. Emphasizing that "no jurisdictional defect [had] lingered through judgment," the Court noted remanding the case back to state court "would impose an exorbitant cost on our dual court system, a cost incompatible with the fair and unprotracted administration of justice." *Id.* at 77.

*Caterpillar* stands for the proposition that when remand to state court would "impose an exorbitant cost," a federal court may overlook a jurisdictional defect at the time of removal that has subsequently been cured. *Id.* Zee and BMO Harris ask us to extend the holding of *Caterpillar* to find that a federal court may overlook a statutory defect at the time of removal that has *not* subsequently been cured. We decline to make such an extension in the case at hand.

The situation faced by the Supreme Court in *Caterpillar* is distinguishable from the situation we face here for four reasons. First, and most obviously, this case has been in federal court for only a fraction of the time that

the *Caterpillar* case was in federal court. The final determination in *Caterpillar* consisted of a jury trial more than four years after removal to federal court. But in this case, the final determination consisted of a dismissal less than three months after removal to federal court. It is true that during the course of these three months, GE Betz, Zee, and BMO Harris flooded the district court judge with a "paper blizzard." Yet the fact remains that, even now, the case has been in federal court for less than one year, weakening any considerations of finality, efficiency, and economy.

Further weakening any considerations of finality, efficiency, and economy is the way in which the district court judge dismissed GE Betz's case. On a day that the parties thought they were merely going in front of the judge to argue about a protective order, the judge instead decided from the bench "to call a halt to all this." Although we certainly understand the district court judge's frustration with all the "garbage" that the parties have filed in this case, the judge did not adequately address at least two of GE Betz's arguments in his dismissal. For example, the district court judge failed to address GE Betz's argument that BMO Harris's UCC filing did not perfect its security interest in all of Zee's assets, and in particular, its real property. Additionally, while the judge briefly addressed GE Betz's fraudulent-transfer claim, the judge misstated the claim's required elements. The judge found the fraudulent-transfer claim meritless because "Harris has no stake in pursuing remedies that would somehow

jeopardize its own interest," suggesting that GE Betz would need to prove that Harris had fraudulent intent when it entered into the credit facility. But fraudulent transfer requires proving that Zee—*not Harris*—had "actual intent to hinder, delay, or defraud" when it entered into the credit facility. 740 Ill. Comp. Stat. 160/5(a)(1). Furthermore, neither the fraudulent-transfer argument nor the real-property argument is automatically resolved by the "first in time, first in right" rule, which formed the basis of the judge's dismissal.

The way in which the district court judge dismissed the case particularly weakens any considerations of finality, efficiency, and economy in light of the discovery and procedural rights to which GE Betz would have been entitled had the case remained in the Cook County Circuit Court. As detailed in Section III.A, it is "reversible error" for an Illinois state court "to decide [a citation action] based solely on the arguments of counsel"—which is precisely what occurred here. *Workforce*, 977 N.E.2d at 276. In this case's original venue, GE Betz would have been entitled to additional, extensive discovery, including the discovery of all "books, papers, or records in [Harris's] possession or control which have or may contain information concerning the property or income of [Zee]." Ill. Comp. Stat. S. Ct. R. 277(c)(4). This additional discovery would have been particularly useful on the issues of fraudulent transfer and the perfection of Harris's security interest. More importantly, GE Betz would have been entitled to an evidentiary hearing or trial, in which it could have "subpoena[ed]

witnesses and adduce[d] evidence as upon the trial of any civil action." Ill. Comp. Stat. S. Ct. R. 277(e). GE Betz enjoyed none of these benefits in the federal district court.

The final reason why we are unmoved by considerations of finality, efficiency, and economy is that the underlying removal defect remains uncured in this case. In the *Caterpillar* case, the Supreme Court was moved by such considerations because "no jurisdictional defect lingered through judgment." 519 U.S. at 77. Yet the removal defect lingers on in the present case. BMO Harris was a forum defendant when the case was removed; BMO Harris is still a forum defendant today. True, the removal defect in *Caterpillar* was jurisdictional; the defect here is only statutory. But considering the district court's lightning-fast resolution of this very complicated case—made possible, in part, by its refusal to let GE Betz conduct the full exploration that a citation proceeding allows on at least two of its claims against Zee and Harris—the fact that a statutory defect remains uncured only strengthens our conclusion that considerations of finality, efficiency, and economy are virtually nonexistent here.

## V

In a last-ditch attempt to keep this case in federal court, Zee and BMO Harris make one final argument why we should ignore the statutory defect in removal: waiver. According to them, GE Betz waived the removal defect created by the forum-defendant rule for

two reasons: (1) GE Betz failed to mention the forum-defendant rule in its initial filing to support remand, and (2) GE Betz proceeded to litigate the case on the merits despite the forum-defendant removal defect. We consider both waiver arguments in detail below.

**A**

Zee and Harris's first waiver argument centers on GE Betz's failure to mention the forum-defendant rule in its initial memorandum to the district court addressing the propriety of removal. Zee and Harris concede that GE Betz raised the forum-defendant issue well within the thirty-day period required by 28 U.S.C. § 1447(c). But the first time that GE Betz mentioned the forum-defendant rule in a written filing was in its motion to reconsider. As a result, Zee and Harris argue that under *Brooks v. City of Chicago*, 564 F.3d 830, 833 (7th Cir. 2009), GE Betz automatically waived the forum-defendant argument because "any arguments . . . raised for the first time in [a] motion to reconsider are waived."

This argument ignores what transpired in the courtroom prior to GE Betz filing a motion to reconsider. Technically, this argument was not raised for the first time in GE Betz's motion to reconsider; it was raised earlier, during the hearing on GE Betz's initial oral motion to remand. At this hearing, the district court judge, on his own, brought up the forum-defendant problem, stating:

> There is, of course, a complicating factor, if you wait just a minute, and that has to do with looking at 1441(b)(2), . . . if Harris partakes of Illinois citizenship . . . . So under 1441(b)(2), if Harris were a party as such, the action could not be removed because . . . we . . . permit removal by foreign corporations but not by a domestic corporation.

Evidently, the forum-defendant rule gave the district court judge some pause at that first hearing. But, as we know, the judge ultimately decided not to take more time considering Harris's status in the case and ask the parties for additional briefing. Instead, the judge dismissed the forum-defendant problem as a nonissue.

In deciding whether an argument has been properly preserved, one factor we evaluate is when the opposing party was on notice of the argument. *See, e.g., Hernandez v. Cook Cnty. Sherriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011) (explaining that the "underlying concern [with waiver] is to ensure that the opposing party is not prejudiced by being denied sufficient notice to respond to an argument"). Given the judge's discussion of the forum-defendant rule at the hearing on the initial motion to remand, Zee and Harris should have been on notice of a potential forum-defendant problem from the outset.

Another factor we evaluate is whether the district court "effectively considered" the argument during its initial determination. *See Kunz v. DeFelice*, 538 F.3d 667,

681 (7th Cir. 2008) (finding an argument waived if it "require[d] the application of a novel legal theory" that was "not fully developed" during the initial determination); *see also Bloch v. Frischholz*, 587 F.3d 771, 784 (7th Cir. 2009) (finding an argument waived because the district "court never considered" the plaintiffs' argument before the motion to reconsider). Perhaps the district court judge did not evaluate the forum-defendant argument as thoroughly as he should have, but there is no question that the judge effectively considered the implications of the forum-defendant rule at the first hearing.

Furthermore, we find this waiver argument even more unpersuasive given the circumstances surrounding that first hearing. On September 12, 2012, Zee filed both a notice of removal and an emergency motion for relief from the citation served on BMO Harris. Only two days later, on September 14th, all three parties appeared before the district court at 9:15 a.m. to argue the emergency motion. At that time, GE Betz orally contested the propriety of Zee's removal, citing several cases to support its position, including *Travelers*, 689 F.3d at 714. The judge had his law clerk print these cases and, after briefly glancing at them on the bench, told GE Betz "that the cases that you have provided me with don't create a very inspiring position for your argument." GE Betz then begged the judge to delay his determination until the afternoon, noting that it had not received Zee's notice of removal and emergency motion until 3:30 p.m. on September 13th and had

"worked during the night to try to pull [its argu-ment] together." The judge allowed GE Betz more time, instructing the parties to come back at 2:30 p.m. *It was during those few hours of recess that GE Betz filed its written memorandum to support remand.* When the parties returned at 2:30 p.m., the district court denied remand on the basis of both subject-matter jurisdiction and the forum-defendant rule.

Undoubtedly, this entire case was adjudicated at light-ning speed, but GE Betz's initial motion to remand was decided particularly rapidly. Yet Zee and BMO Harris ask us to find that GE Betz waived an argu-ment in the memorandum supporting its initial motion, despite the fact that it had less than twenty-four hours to research it and only a few hours to write it. We remind Zee and Harris that the "[r]ules of practice and procedure are devised to promote the ends of justice, not defeat them." *Hormel v. Helvering*, 312 U.S. 552, 557 (1941). Because GE Betz had almost no time to collect its thoughts or even find its best argument before filing this initial memorandum, we decline to hold GE Betz to the exceptionally strict waiver rule that Zee and Harris advocate. *Cf. Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 608 (7th Cir. 2012) (noting that we enforce the appel-late waiver rule "unless . . . 'the equities heavily prepon-derate in favor of correcting it'" (quoting *Judge v. Quinn*, 624 F.3d 352, 360 (7th Cir. 2010))); *Johnson v. Artim Transp. Sys., Inc.*, 826 F.2d 538, 548 (7th Cir. 1987) (explaining that in the context of the appellate waiver rule, "[t]here are narrow exceptions," including "'exceptional circum-

stances where justice demands more flexibility' " (quoting *Zbaraz v. Hartigan*, 763 F.2d 1532, 1544 (7th Cir. 1985))).

In closing our discussion of Harris and Zee's first waiver argument, we note that it is not our intent to criticize the speed with which the able district judge addressed this litigation. In fact, his promptness in attempting to sort out this messy case is to be commended. Our only disagreement with his creditable efforts in this matter is with the conclusions he reached on the remand request, security interest perfection, and fraudulent transfer issues.

**B**

Even though their first waiver argument fails, BMO Harris and Zee claim that they have a second, "brighter bulb" reason for finding that GE Betz waived the forum-defendant argument (despite formally presenting the argument only sixteen days after removal). Harris and Zee argue that GE Betz "consented" to being in federal court by litigating the case on the merits after losing its initial motion to remand. In fact, Zee told us at oral argument that "before [GE Betz] presented [its] motion to reconsider, [it] had a separate citation issued by the district court to Zee. . . . [GE Betz] filed a motion to modify the TRO . . . for [its] own benefit with the district court. And then [it] issued a deluge of discovery." Zee and Harris then cite *Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 186 (7th Cir. 1984), for the proposition that a plaintiff cannot "thr[o]w in the towel" and start

litigating the case on the merits after losing a motion to remand; instead, a plaintiff must "st[i]ck by his guns and . . . [be] vindicated . . . on appeal."

This argument misconstrues the holding in *Bernstein*. The plaintiff in that case brought suit in an Illinois state court alleging that the defendants had violated state law. The defendants removed the action to federal court, claiming that federal law, not state law, governed the plaintiff's rights (the underlying facts involved unsuccessful transactions in securities). *Id*. at 181-82. The plaintiff disputed the defendants' claim and filed a motion to remand the case back to state court based on lack of subject-matter jurisdiction. The federal district court incorrectly denied the plaintiff's motion. *Id*. at 182. At that point, the plaintiff then decided to amend his complaint and add a federal cause of action against one of the defendants. *Id*. at 185. Even though the federal district court had lacked subject-matter jurisdiction over the plaintiff's first complaint, the district court now had original jurisdiction over his amended complaint. *Id*. Under these circumstances, our court held that "once [the plaintiff] decided to take advantage of his involuntary presence in federal court to add a federal claim to his complaint he was bound to remain there." *Id*.

Unlike the plaintiff in *Bernstein*, GE Betz has done nothing to take advantage of its involuntary presence in federal court. It has never added a federal claim to its original registration and citation action. Nor has GE Betz taken any actions that resolve the underlying problem with removal. There was a forum-defendant

problem at the time of removal because BMO Harris was a defendant; there is a forum-defendant problem now because BMO Harris is still a defendant. Contrast the plaintiff's actions in *Bernstein*, which resolved the underlying problem with removal. When the *Bernstein* defendants filed a notice of removal, the federal district court did not have subject-matter jurisdiction over the controlling complaint. But once the *Bernstein* plaintiff amended his complaint to include a federal cause of action, the district court gained jurisdiction.

Besides misconstruing the holding in *Bernstein*, Harris and Zee's argument also misconstrues the record in this case. Zee's statement at oral argument that GE Betz had a citation issued to Zee, filed a motion to modify the TRO, and issued discovery requests *before presenting its motion to reconsider* is not true. In the fourteen-day period between the denial of the motion to remand and the filing of the motion to reconsider, the only thing that GE Betz filed was an attorney appearance form. Meanwhile, during that same fourteen-day period, Zee and BMO Harris filed an emergency motion for a preliminary injunction, set a hearing for a TRO, drafted a TRO, and filed another motion to quash the citation served on BMO Harris. Eventually, GE Betz would issue a second citation to Zee, file a motion to modify the TRO, and issue discovery requests—but only *after* filing its motion to reconsider.

Upon reviewing the record, it is clear that GE Betz has not "invoke[d] the jurisdiction of the federal court, and then disclaim[ed] it when [it] los[t]." *Bernstein*, 738 F.2d

at 185-86. Two days after Zee filed a notice of removal, GE Betz began asking the federal district court to remand the case back to Cook County where it belongs. Only after it properly preserved its forum-defendant argument did GE Betz begin litigating the case on the merits. Nor has GE Betz ever "thr[own] in the towel" on its forum-defendant argument. *Id*. at 185. On the contrary, GE Betz raised the argument again in its first filing with our court, and it has continued to raise the argument in every subsequent filing. Clearly, GE Betz has stuck to its guns on the forum-defendant argument throughout this litigation. Now, under *Bernstein*, 738 F.2d at 186, it is time for us to vindicate GE Betz's forum-defendant argument on appeal.

## VI

No matter how many ways Zee and BMO Harris try to recharacterize what happened in this case, the fundamental facts are as follows: Zee removed this case to federal court even though its co-defendant, BMO Harris, was a forum-defendant, in violation of 28 U.S.C. § 1441(b)(2). GE Betz objected to the removal based on the forum-defendant rule within the thirty days prescribed by 28 U.S.C. § 1447(c). Despite GE Betz's timely objection, the federal district court improperly retained the case and eventually dismissed it on the merits. Because the district court should never have reached the merits of this case, we now VACATE its dismissal. Furthermore, we REMAND the case to the district court with instructions to REMAND the case back to its original

venue, the place where it properly belongs: Cook County Circuit Court.